# EBER C. PREBLE

*v.*

# CRAYTON H. CONGER *et al.*

1. ESTOPPEL *in pais—to assert mortgage as against a subsequent purchaser.* To hold that mortgagees are estopped from asserting their mortgage as against a subsequent purchaser of the mortgaged property, where the proof shows a large indebtedness, the proof of the facts out of which the estoppel is claimed to arise, ought to be of a very clear and satisfactory character.

2. And where the facts claimed to create the estoppel are denied, and it appears that the purchaser, before purchasing, took a written agreement from the mortgagees, in the absence of proof of a mistake therein, he will not be allowed to prove verbal statements and assurances made to him by one of the mortgagees as to the nature and extent of their claim, out of which to create an estoppel.

3. Where the statements of the mortgagees as to the amount due them was a mere matter of opinion, and they used no active efforts to induce the purchase, but the purchaser relied upon the assurances of the mortgagor from whom he purchased, and might, by the use of reasonable diligence on his part, have ascertained the amount of the incumbrance: *Held,* that the mortgagees were not estopped from claiming the amount due them upon their mortgage as against such purchaser.

4. But where the mortgagees entered into a written agreement with one purchasing the mortgaged property of the mortgagor, that, when they should receive all moneys due them from the mortgagor and the firms of which he was a member, they would assign and transfer to such purchaser their mortgage and all their claims upon the property, this was *held* to estop them from claiming, under their mortgage, any more than such indebtedness due them from the mortgagor and the firms of which he was a member.

5. MORTGAGE—*to secure subsequent advances—limited to advances made to notice of sale.* It seems, in general, that, where a chattel mortgage is given to secure future advances, all advances made subsequent to a sale by the mortgagor, of the mortgaged property, the mortgagee having notice of the sale, will be postponed to the rights of such purchaser.

6. SAME—*exception to rule.* But where the mortgagees had become the guarantors of the mortgagor to third parties, for building a hotel according to contract, and had taken a chattel mortgage from the contractor to indemnify them and to secure them in the payment of whatever sum might be due them on the completion of the contract, by reason of their

advances and payments in discharge of their guaranty: *Held*, that the mortgagees had the right to make, on the strength of the mortgage, such advances and payments as were necessary for their discharge from the guaranty, as well *after* notice of the sale of the mortgaged property as before.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was a bill in chancery, by Eber C. Preble, against Crayton H. Conger, Nathan H. Walworth, George R. Roberts, Morton B. Hull and Roswell H. Morgan, to enjoin Conger, Walworth & Co. from proceeding against a planing mill and machinery, under a chattel mortgage held by them.

Morgan once owned the property, subject to a chattel mortgage thereon to Jacob R. Shepherd & Co. for $7500. Conger, Walworth & Co. became guarantors for Decker & Morgan upon a contract with Tobias & Rice to build a hotel, that they would perform the contract. Morgan then executed the chattel mortgage involved in this suit to Conger, Walworth & Co. to indemnify them, and for any balance that might be due them, on the completion of the work, from Morgan and the firms of which he was a member.

Morgan, also being indebted to Preble, sold the mortgaged property to him, and he paid off the Shepherd mortgage. Prior to this purchase, Preble procured from Conger the following written agreement:

*"Know all men by these presents,"* etc., "That, on this 14th day of May, A. D. 1870, Conger, Walworth & Co. have entered into agreement with E. C. Preble, for a valuable consideration, whereby we agree," etc., "that when all mortgages and judgment liens now standing against Morgan & Decker, Morgan & Hastings, and R. H. Morgan, shall be cleared up and satisfied of record, and when Conger, Walworth & Co. shall have received all moneys now due us from Morgan & Decker, Morgan & Hastings, and R. H. Morgan, then and at that time said Conger, Walworth & Co. hereby covenant and

agree with Preble to assign and make over to Preble all claim now held by us against the mill, stock, horses, wagons and harness, of Morgan & Decker, Morgan & Hastings, and R. H. Morgan, situated," etc., "together with all liens against said stock, acquired by virtue of two chattel mortgages, and agree to assign to Preble all leases held by us of said Morgan & Decker, Morgan & Hastings, and R. H. Morgan, and all liens now held by us against them.

"CONGER, WALWORTH & CO."

Conger, Walworth & Co. filed their cross-bill, setting up their mortgages, and praying for an account, etc., and general relief. The court, on the hearing, rendered a decree dismissing the original bill, and found the sum due Conger, Walworth & Co. on the cross-bill, and declared the same a valid and subsisting lien upon the property. From this decree Preble appealed.

Messrs. SPAFFORD, McDAID & WILSON, for the appellant.

Mr. SANFORD B. PERRY, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

One ground of objection taken to the mortgage in question is, that it is fraudulent and void, as having been made with a view to hinder and delay creditors. An examination of the evidence shows that this objection is without foundation in the facts of the case.

Another, and the main ground of defense urged against the mortgage, is, that the appellees, Conger, Walworth & Co., are estopped from setting up the mortgage against the appellant, Preble, for the reason that, when he was about making the purchase of the mortgaged property, Conger, by his conduct, led Preble to suppose that he would not have to pay the mortgage; that it would not be enforced against the property, and that it would be delivered up to Preble on the approaching completion of a certain hotel.

Tobias & Rice being about to build a hotel in Chicago, Decker & Morgan took the contract for the carpenter work, at $21,250. Conger, Walworth & Co. guaranteed the performance of this contract on the part of Decker & Morgan, and were to receive the money that should be paid upon the hotel estimates.

The statement of Walworth, in his testimony, which does not seem to be overcome by anything in the record, is, that this mortgage involved in this suit, of March 9, 1870, for $6000, was given to secure the indebtedness of Decker & Morgan, and of Morgan, to Conger, Walworth & Co., and to indemnify the latter against their guaranty of the performance of the hotel contract; such indebtedness at the time actually exceeding the sum of $7000, and that $6000, for which the mortgage was given, was named as the sum thought sufficient to cover the probable amount of the liability that there would be under said guaranty at the time of the completion of the hotel contract.

The sum found due under the mortgage, by the court in its decree, was $4953.16. To hold such an amount of indebtedness to be satisfied by mere estoppel, the proof of the facts out of which the estoppel is claimed to arise, ought to be of a very clear and satisfactory character.

The facts relied upon as creating an estoppel *in pais*, in this case, are, as testified to by Preble and Morgan, that, immediately before the purchase on May 14, 1870, by Preble, of the mortgaged property, Conger, of the firm of Conger, Walworth & Co., made an express agreement with Preble that, when the hotel spoken of was completed, which it was expected would be in a few days, they would give up this $6000 mortgage; and that Morgan, in the presence of Conger, stated to Preble that, on the completion and settlement of the hotel contract, there would be nothing due to Conger, Walworth & Co., and that Conger made no contradiction of the statement. There is an express denial of these facts by the testimony of Conger. The probability of the case lends corroboration to

the testimony of Conger. It is highly improbable, under any circumstances disclosed in this record, that a man of ordinary business capacity would voluntarily agree to relinquish, for nothing, a security for an indebtedness of such a large amount as the one in question.

By way of accounting for a voluntary relinquishment of the mortgage, as here claimed, much stress is laid by appellant upon the fact that the receipts on the hotel estimates were to come into the hands of Conger, Walworth & Co., and that these receipts, of themselves, were a full indemnity against any loss on their guaranty; but it seems they were not, and that this mortgage was given under a demand of Conger, Walworth & Co., for further security in that respect; that advances of money and material, which had been made to Morgan for the purpose of the hotel contract, had, to a large amount, been misapplied by him to other uses.

This agreement is testified to by Preble and Morgan as having been made at the office of Mr. Kohlsaat, the attorney of Preble, who drew his writings; but there had been a previous interview between the parties, a short time before, on the same day, at which Hastings, a partner of Morgan, was present, who testifies to what then occurred, which goes in corroboration of Conger.

Morgan, as sworn to, had promised Preble that he would get up this mortgage, and bring it to him the next morning. Instead of that being done, Conger went to the planing mill of Morgan the next day, and had an interview with Preble and Morgan. The substance of their conversation, as testified to by Hastings, was as follows: Conger said that, when the hotel was finished, and they, Conger, Walworth & Co., got their pay for all that was due them, they would release everything; that it was impossible then to state how the accounts would stand on the completion of the hotel.

Morgan stated that, on the completion of the hotel, the indebtedness to Conger, Walworth & Co. would be paid up,

or nearly up.    Conger did not say either that it would or would not.

What would be due, on the settlement of the hotel contract, was matter of opinion and of entire uncertainty, as evidenced by the statement of Morgan, in his testimony, that his expectations were not realized on making settlement of the hotel contract, and the accounts between him and Conger, Walworth & Co. were not paid off; that he was owing them at that time about $4000, including Decker & Morgan's account.

From this interview, testified to by Hasting, the parties seem to have gone to Mr. Kohlsaat's office, where the agreement was made, as testified to by Preble and Morgan.    Preble left instructions to Kohlsaat to draw up the agreement for Conger to sign, and went away to arrange for the money with which to pay off a prior mortgage on the property, in favor of Jacob R. Shepherd & Co., for $7500, leaving Conger and Morgan in the office.    Mr. Kohlsaat drew up the agreement, which was executed by Conger, in the name of Conger, Walworth & Co.    It purported to be an agreement between them and Preble, whereby they agreed with him "that, when all mortgage and judgment liens now standing against Morgan & Decker, Morgan & Hastings, and R. H. Morgan, shall be cleared up and satisfied of record, and when, further, we, Conger, Walworth & Co., shall have received all moneys now due us from said Morgan & Decker, Morgan & Hastings, and R. H. Morgan, then, and at that time, we, the said Conger, Walworth & Co., hereby covenant and agree to and with said Preble to assign and make over to said Preble the mortgaged property and all claims against it," etc.

This agreement in writing should control the rights of the parties, and be taken as the true evidence of the matter relied upon as an estoppel.

But, to avoid its effect, Preble alleges that it does not embody truly the verbal agreement that was made; but it

accords with what Conger stated he would do, at the interview just before at the planing mill, as testified to by Hastings. It is not probable that Kohlsaat, the attorney of Preble, in drawing up the agreement, would depart from the instructions Preble gave him. Morgan, the witness of all that took place between the parties, heard the agreement read over before Conger signed it, and, so far as appears, gave no intimation that it did not express the true agreement. Preble never appears to have expressed to Conger, Walworth & Co. any dissatisfaction with the written agreement, although he acted on it by paying to them some small sums on account of Morgan's indebtedness, and when the amount of the appellees' claim was finally ascertained, Conger showed it to Morgan and Preble, and, with them, compared it with Morgan's books, then in Preble's office. Preble does, however, state that he expressed to Kohlsaat such dissatisfaction. It would be a great injustice to the appellees, after having had embodied in a written agreement, which they supposed to be satisfactory, the result of what they had said or done to affect the validity of their mortgage, to have the effect of the same destroyed by evidence of a contrary verbal agreement, made at the time the written one was entered into. The rules of evidence will not permit it to be done, unless in case of clear proof of mistake. There is no such proof here.

Stress is laid upon a statement testified to as having been made by Preble, about the time he left Kohlsaat's office to make arrangement for the money to pay the prior Shepherd mortgage of $7500, which was to the effect that he would not pay the Shepherd mortgage if there was any liability of his having to pay the mortgage in question; that he would throw up the trade.

This would indicate an expectation on the part of Preble that he would not have to pay this $6000 mortgage; but it is not perceived wherein this should affect the appellees, unless such an expectation was reasonably raised by what they had themselves said or done.

The duty was not imposed upon them, of active interference by their counsel, to dissuade Preble from the course he saw fit to pursue.

He was made aware that the claim under the mortgage was to secure the indebtedness that might ultimately be found to be due from Morgan to appellees, on the completion and settlement of the hotel contract; that the amount of such indebtedness was then uncertain, and but a matter of opinion. Preble seems to have relied upon the opinion of Morgan, and taken the chances. It would have been the dictate of but ordinary prudence, before purchasing, to have required the appellees to name what would be the outside limit of their claim, or, by closer inquiry and investigation, have endeavored to ascertain its probable extent, or to have deferred the purchase until their claim should be liquidated, or have declined the purchase altogether. A court will require of parties a reasonable degree of diligence and prudence in the management of their own affairs, and will not visit the consequences of their own imprudence and carelessness upon innocent persons.

There is an estoppel in the case. The appellees are precluded, by their written agreement, from claiming the face of their note and mortgage, $6000, or any more than the amount of the indebtedness of Morgan and the firms of which he was a member. This is the extent of any estoppel which we can find to arise from the facts of the case.

It appears that, subsequent to May 14, 1870, the date of Preble's purchase, the appellees advanced to Morgan, in materials and money, the sum of $2916.40; and it is claimed that, even if the mortgage be held valid, these subsequent advances must be postponed to the rights of Preble as such purchaser.

The general rule is admitted by appellees' counsel that, in the case of a mortgage to secure future advances, all advances made subsequent to a sale made of the mortgaged property, the mortgagee having notice of the sale, will be postponed to the rights of such purchaser.

But they insist that this case comes within an acknowledged
exception to the rule; that advances made after such a sale,
by virtue of a liability incurred prior to the sale or notice of
the sale, are protected.

·The appellees, being holden to Tobias & Rice for the fulfil-
ment of Morgan's hotel contract, and, as we find from the
evidence, having taken this mortgage as security, among other
things, for whatever should, on the completion and settlement
of that contract, be due them by reason of their advances
and payments in discharge of their guaranty, had a right,
we are of opinion, to make, on the strength and credit of said
mortgage, such advances and payments as should be necessary
for their discharge from their guaranty, as well *after* Preble
bought the property covered by the mortgage, as before.
These subsequent advances, as we find, were all made in dis-
charge of appellees' guaranty to Tobias & Rice of Morgan's
contract, entered into by them some five months prior to
Preble's purchase.

The decree of the court below must be affirmed.

                                              *Decree affirmed.*