### DAVIS et al. v. CARLISLE.

(Circuit Court of Appeals, Eighth Circuit. November 25, 1905.)

#### No. 2,197.

1. EVIDENCE—PAROL EVIDENCE VARYING MORTGAGE.

Where a mortgage secured a note, and also contained an express pro-vision that it should secure future advances, which were thereafter made, the lien of the mortgage cannot be defeated by parol evidence that when it was given nothing more was contemplated than the debt then existing.

2. CHATTEL MORTGAGES—PRIORITIES.

Where, under a chattel mortgage providing for future advances, but leaving it optional with the mortgagee whether he shall make them, they are made after he has been advised that a subsequent mortgage had been given on the property, his lien for such advances will be postponed to that of the junior incumbrance.

3. PAYMENT—APPLICATION—RIGHTS OF THIRD PERSONS.

The holder of a chattel mortgage, securing a note and also subsequent advances, which was a first lien as to the note, but subordinate to a second mortgage as to the advances, was bound as against the second mortgagee to apply proceeds of the mortgaged property paid him by the debtor on the note, and such proceeds will be so applied in a contest between them for priority of lien.

In Error to the United States Court of Appeals in the Indian Territory.

For opinion below, see 82 S. W. 682.

This was an action in replevin by Carlisle to recover possession of 40 acres of cotton. In December, 1900, he sold to the defendant Davis a span of mares and took from him a note for the purchase price and to secure the same a chattel mortgage upon the mares and also upon the cotton. It was recited in the defeasance clause of the mortgage that it should be void if Davis paid the note and all other indebtedness including all other accounts made or given up to October 1, 1901. At that time there was no other indebtedness to Carlisle than the note. In February, 1901, Davis executed to the Hayes Mercantile Company a mortgage upon personalty including the cotton in controversy to secure a debt then created. It was specified in this mortgage that, as to the cotton, it was subordinate to the one given to Carlisle to secure the note already mentioned. In March and July, 1901, Carlisle also advanced additional sums to Davis and took his notes therefor maturing October 1st. In the fall of that year Davis paid to Carlisle from the proceeds of part of the mortgaged cotton sums which were more than sufficient to discharge the first note, but not sufficient to discharge all of them. He also returned to Carlisle the mortgaged animals, but the record is silent as to their value and as to the price at which they were taken. Without the concurrence of Davis or the mercantile company, Carlisle applied part of the money paid him upon the last two notes, leaving a balance due upon each of them as well as upon the first one. When advised of this, Davis objected and claimed that his mortgage was satisfied. The defendants offered evidence tending to show that in December, 1900, when the mortgage was given to Carlisle, no other indebtedness was in contemplation between the parties thereto than that for the animals then purchased; that in the early part of the following year, 1901, Davis went to Carlisle and inquired whether he would furnish him with supplies and money to enable him to make his crop, but Carlisle declined to do so; that Davis then informed him he would have to apply to Hayes of the mercantile company for the accommodation, and afterwards did so with the result already shown; that subsequently, but before Carlisle made his loans of March and July, Davis advised him of the mortgage he had given to the mercantile company. After a trial before a United States Commissioner the cause was appealed to the United States Court for the Western District of the Indian Territory, where it was tried anew to a jury. The plaintiff obtained a verdict and a judgment. An appeal to the United States Court of Appeals in the Indian Territory resulted in an affirmance of the judgment. Thereupon this writ of error was obtained.

It is claimed that in the instructions to the jury the defendants were erroneously deprived of these defenses asserted at the trial: First, when the mortgage from Davis to Carlisle was given, no other indebtedness than that then existing was contemplated, and therefore the latter had no lien upon the cotton in controversy securing his subsequent loans; second, if he had such a lien, it was subordinate to that of the mercantile company, for the reason that when he made the loans he was advised that the company had previously secured its mortgage upon the cotton.

De Roos Bailey and Thomas H. Owen, for plaintiffs in error.

William T. Hutchings, for defendant in error.

Before VAN DEVANTER and HOOK, Circuit Judges, and LOCHREN, District Judge.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The mortgage to Carlisle contained an express and unambiguous provision that it should secure future advances, and, such advances having been made, his lien cannot be defeated by parol evidence that when the mortgage was given nothing more was contemplated than the debt then existing. To this effect is Moore v. Terry, 66 Ark. 393, 50 S. W. 998. The case of Martin v. Halbrooks, 55 Ark. 569, 18 S. W. 1046,

does not conflict with this conclusion. There a mortgage given to secure a present indebtedness due at a specified date and also all other indebtedness then due was held not to include a pre-existing judgment in favor of a third party, which the mortgagee afterwards bought at a discount and charged in full to the mortgagor. The judgment purchased was not of the same character of indebtedness as that existing at the time the mortgage was given, and the court upon consideration of all the circumstances concluded that it was not within the intention of the parties as manifested by the language of the mortgage. That, however, is not the case now before us.

Carlisle had a lien upon the property in controversy securing not only his original note, but also his subsequent advances; but under the evidence the question still remained whether, as to the latter, it was superior to the lien of the mercantile company whose mortgage was given after that of Carlisle but before his subsequent advances were actually made. In this connection it should be observed that the recital in the mortgage to the mercantile company that it was second to that of Carlisle was confined to the original note therein described, and did not extend to indebtedness that might thereafter arise.

It is not claimed that Carlisle had obligated himself to make any further advances to Davis. On the contrary, it was entirely optional with him whether he should do so. There was evidence in the case that when first applied to for the additional loans he declined to make them, and that Davis then informed him that he would have to go elsewhere. There was also evidence that Carlisle was subsequently informed of the transaction with the mercantile company, and that this information was given him before he made the additional loans which he now asserts as of the date of his mortgage.

When, under a mortgage providing for future advances, but leaving it optional with the mortgagee whether he shall make them, they are made after he has been advised that a subsequent mortgage has been given upon the property, his lien for such advances will be postponed to that of the junior incumbrance. Schiffer v. Feagin, 51 Ala. 335; Preble v. Conger, 66 Ill. 370; Barnard v. Moore, 90 Mass. 273; Nicklin v. Nelson, 11 Or. 406, 5 Pac. 51, 50 Am. Rep. 477; Bank Mont. Co.'s Appeal, 36 Pa. 172; Shirras v. Caig, 7 Cranch, 34, 3 L. Ed. 260; United States v. Lenox, Fed. Cas. No. 15,592; Ward v. Cooke, 17 N. J. Eq. 93; National Bank v. Gunhouse, 17 S. C. 489; Ter-Hoven v. Kerns, 2 Pa. 96; Brinkerhoff v. Marvin, 5 Johns. Ch. 320, 326; Brinkmeyer v. Browneller, 55 Ind. 487; Ladue v. Railroad Co., 13 Mich. 380, 87 Am. Dec. 759.

If the mortgage of Carlisle was, as to the subsequent loans, subordinate to that of the mercantile company, he had no right, without the consent of the latter, to apply the proceeds of the mortgaged property as he did. In such a case, being sufficient for the purpose, they should have been applied to the complete discharge of the original note. The rights of the parties in the remainder of the mortgaged property now in controversy should be determined as though the application of payments had been made in the manner prescribed by law.

The trial court instructed the jury that Carlisle's mortgage was a val-

-id one securing not only his original note, but also his subsequent advances. This instruction was correct as far as it went, but it was supplemented by the following:

"Unless all the items of indebtedness made by Davis with Carlisle from the date of mortgage to October 1, 1901, have been paid, your verdict should be for plaintiff."

These instructions taken together, and they were not qualified in the remainder of the charge, had the effect to withdraw from the jury all of the evidence touching the notice to Carlisle of the mortgage of the mercantile company, and they prevented the application of the pertinent and controlling rule of law to such a situation. Under these instructions there was nothing left for the jury to do but to return a verdict for Carlisle, for it was conceded that the payments made him were insufficient to wholly discharge all of his claims. It is said in the opinion of the appellate court of the territory, with reference to the last instruction:

"There is no doubt, as an abstract proposition of law, that this instruction ought to be allowed to stand."

Even were this true, the objection would still remain that instructions should not be mere abstract propositions of law. They should not be given unless pertinent to the particular issues of the case; and they cause reversible error where they serve to mislead the jury or result in a denial of a substantial right. As grievous and prejudicial an error may be committed by the misapplication to the facts of a well-settled proposition of law as by the announcement of one inherently unsound.

The judgments of the United States Court of Appeals in the Indian Territory and of the United States Court for the Western District of the Indian Territory are reversed, with direction to award a new trial.