GAREY v. RUFUS LILLARD CO. et al.

No. 30981. Nov. 20, 1945.

Rehearing Denied Jan. 29, 1946.

*165 P. 2d 344.*

Edward Howell, of Oklahoma City, M. I. Hauser, of New York City, and J. D. DeBois, of Oklahoma City, for plaintiff in error.

Robert O. Brown, of Duncan, Reily & Reily and Wyatt, Wyatt & Green, all of Shawnee, Henry S. Griffing and John A. Johnson, both of Oklahoma City, and Chas. E. Wells, of Shawnee, for defendants in error.

PER CURIAM. This is an appeal by Eugene L. Garey from a judgment of the district court of Pottawatomie county rendered on November 17, 1941, which foreclosed certain real estate mortgages held by the said Garey and liens of numerous laborers and materialmen and adjudged priority thereof and directed sale of the premises and from an order made by said court on April 20, 1942, directing the application of funds in the hands of receiver to the payment of the amount adjudged due said Garey on a first mortgage.

The facts material to the issues here to be determined will be briefly stated. On March 12, 1940, Rufus Lillard Company instituted an action in the district court of Pottawatomie county against Yorkan Production Corporation et al. to foreclose a materialmen's lien upon an oil and gas mining lease and leasehold situate in said county and to obtain the appointment of a receiver for all of the properties of said corporation. The court upon the same day, on answer of Yorkan Production Corporation admitting its insolvency and requesting the appointment of receiver, appointed Paul Brown, its attorney and secretary, as receiver of said corporation. The receiver reported that there were a number of claims of creditors which had been filed and that an order of reference should be made in the matter, and thereupon the court appointed the Honorable Charles B. Hickok referee to hear and report the evidence in connection with all claims against the Yorkan Production Corporation. The Yorkan Production Corporation owned, in addition to properties in Pottawatomie county, properties in other counties, including two properties in Lincoln county known as the Henry Tipken and Louis Tipken leases, and on which Eugene L. Garey was the holder of rec-

ord of three mortgages and Edmondo Gerli the holder of another mortgage.

Rufus Lillard Company, on May 1, 1940, filed an amended petition in which it asserted a lien on said leases in the sum of $1,313.68, and therein made Eugene L. Garey and other parties defendants to the action pending in the district court of Pottawatomie county. On August 19, 1940, Eugene L. Garey, without questioning the validity of any of the proceedings theretofore had, filed an answer and cross-petition in said action in which he sought a foreclosure of certain real estate mortgages which he held upon the properties in Lincoln county. Other parties claiming liens on said property either by cross-petition or petitions in intervention sought a foreclosure thereof. The parties appeared before the referee and introduced evidence in support of their respective claims.

Eugene L. Garey offered in evidence a real estate mortgage for the principal sum of $35,000 which had been executed on August 22, 1939, and a mortgage for the principal sum of $8,000 which had been executed on October 12, 1939, and a mortgage in the principal sum of $10,000 which had been executed on November 20, 1939. Eugene L. Garey admitted that he had received pursuant to assignment and transfer orders which had been executed in pursuance of a provision in the mortgage of August 22, 1939, the sum of $10,375.85, but that he had applied $5,337.50 of said sum upon a prior claim for attorney fees and expenses which he had against the Yorkan Production Corporation at the time the first mortgage was executed. Garey sought a judgment on his first mortgage for the sum of $34,690 with interest thereon at 10 per cent per annum from February 1, 1940, and attorney fees in the sum of $3,469; and also sought to have the balance due him on each of his subsequent mortgages held first liens on the premises under the provisions in the first mortgage relating to advancements. The Yorkan Production Corporation did not contest the claim of Garey or of the lien claimants.

The referee submitted a revised report of his findings and therein found that the claims of certain individuals, hereinafter named, to laborer's liens upon the premises involved were superior to all of the mortgage liens of Garey and that liens of certain materialmen, hereinafter named, were superior to the second and third mortgages of Garey, but inferior to his first mortgage, and that Garey was not entitled to apply the $5,337.50 of the money which he had received from oil and gas production on the leases to his claim for attorney fees and expenses for services which had been rendered to the Yorkan Production Corporation prior to the execution and delivery of the mortgage of August 22, 1939.

On the revised report of the referee, the court, after correction and amendment, entered a judgment foreclosing laborer's liens in favor of C. D. Parsons, O. H. Barnes, John Tipken, S. Buchanan, C. A. White, Chancy Hawkins, W. C. Kennedy, and L. L. Grimes, and decreeing the same to be prior and superior to the mortgage liens of Eugene L. Garey and materialmen's liens in favor of Rufus Lillard Company, Woods Machine Works, Bell Lumber Company, Lillard & Clark Well Servicing Company, Continental Supply Company, and Halliburton Oil Well Cementing Company, and decreeing the same to be junior and inferior to the liens of Garey's first mortgage and prior and superior liens to his second and third mortgages. The court also gave Garey judgment on his first mortgage for the sum of $29,352.50, with interest thereon at 10 per cent from February 1, 1940, and $2,935.25 attorney fees. All of the mortgage liens were foreclosed and the property ordered sold. On praecipe filed by Eugene L. Garey said property was sold by the sheriff of Lincoln county and at said sale Eugene L. Garey purchased the same for the sum of $45,100, paying to the sheriff of Lincoln county the sum of $6,007.02 in excess of the judgment which had been rendered in his favor on the first mortgage of August 22, 1939. On motion of Eugene L. Garey

this sale was duly confirmed and deed issued to Garey on April 4, 1942. The receiver had in his custody the sum of $6,735.30 which he had collected for oil runs from the Tipken properties, and on April 7, 1942, Eugene L. Garey filed a motion in which he requested that said funds be paid to him, and on opposition thereto by Rufus Lillard Company and others, the court, after hearing the parties on April 20, 1942, entered an order, the pertinent portion of which reads as follows:

"(1) That the motion of Eugene L. Garey herein should be overruled, except that the court finds and adjudges that Eugene L. Garey is entitled to the proceeds of the oil and gas from the Henry Tipken and Louis Tipken lease paid by the purchasers thereof to Paul Brown, receiver herein, after deducting therefrom the direct cost of operating said properties, the court costs, including 15 per cent of the referee's fees, receiver's fees, court reporter's fees and the so-called general overhead of the receiver.

"(2) That the motion and application of Rufus Lillard Company, Halliburton Oil Well Cementing Company and Continental Supply Company should be in all things overruled, except that the funds, as aforesaid, in the hands of Paul Brown, receiver herein, the proceeds of the oil and gas sold from the Tipken leases, and paid to the receiver by the purchasers thereof, less the aforesaid amounts, should be applied and Eugene L. Garey should be directed to apply the same upon his judgment upon his first mortgage foreclosed in this cause, and that unless the same was applied upon the judgment of Eugene L. Garey upon his first mortgage, then the said Eugene L. Garey would be required to pay a similar amount upon the amount bid by him at the sale of the Henry Tipken and Louis Tipken properties by the sheriff of Lincoln County, Oklahoma, in addition to the amount heretofore paid by Eugene L. Garey on said bid."

Eugene L. Garey, as grounds for reversal of the judgment and order above mentioned, assigns 59 specifications of error and presents them under the following propositions:

"1. The original mortgage and two supplemental mortgages of the plaintiff in error, Eugene L. Garey are prior to all of the purported liens of the defendant in error. This involves the following propositions:

"(A) The original mortgage and two supplemental mortgages of Eugene L. Garey provide that same secure all future advances and the advances made as shown by the undisputed evidence under the two supplemental mortgages were made upon the security of the original mortgage.

"(B) On the labor liens the work was performed after the recording of the original and supplemental mortgages. These liens, as shown by the undisputed evidence, are not such liens as entitle the persons performing the labor to a prior lien except upon production of his labor, and in none of the labor liens involved herein, is there any evidence that anything resulted from his labor.

"(C) No statement of lien was filed by the labor claimants; the filing of a petition in intervention in the district court of Pottawatomie County, Oklahoma, in this action, is not a compliance with the mechanics' and materialmen's lien statute where the lien is claimed upon property located in Lincoln County, and failure to file a lien statement in Lincoln County, Oklahoma, is fatal to the validity of said lien.

"(D) Failure to file mechanic's and materialmen's lien within one hundred twenty days from the time of performing of the last labor or furnishing the last material is fatal to the validity of such liens.

"(E) There is no evidence or sufficient evidence of a running or general account and thus upon separate transactions, liens should date as of the time of the furnishing of the material or performing of the labor; the material liens are subsequent to the Garey mortgages.

"(F) That no lien can be impressed upon property by virtue of a claim for certain penalties by reason of overtime labor claimed under the Federal Fair Labor Standards Act and such a claim cannot be made the basis of a lien under our law.

"(G) A claim for car payments or ex-

penses cannot be made the basis of a laborer's lien under our mechanics' and materialmen's lien statute.

"(H) That the mortgages of the plaintiff in error, Eugene L. Garey, are prior and superior to a claimed lien for salary due employees of the debtor corporation.

"2. There is no evidence in the record and there was no evidence introduced that taxes under the Intangible Tax Law, or any other law, were paid on the liens, accounts or indebtedness or choses in action for which liens were foreclosed.

"3. That under the mortgages and assignments and transfers of the proceeds of the oil, gas and distillate from the mortgaged premises, Eugene L. Garey had a first and only lien upon such proceeds and had, under his agreement testified to and not disputed, the right to and did make application upon the indebtedness due him from such proceeds which applications of payments were according to agreement and consented to by the debtor, Yorkan Production Corporation, and therefore the judgment given upon the original mortgage of the plaintiff in error should have been for the amount of $34,690.00 and attorney's fees in the sum of $3,-469.00 instead of the sum of $29,352.50 and attorney's fees of $2,935.25.

"4. That the plaintiff in error, Eugene L. Garey, had a first lien under his original and supplemental mortgages and the assignments and transfers given to him as further security upon the proceeds of the sale of oil, gas and distillate produced from the mortgaged premises, and the right to make application of such proceeds, which were paid to the receiver, upon his account for legal services and expenses, and upon such of the unpaid mortgage indebtedness as he might elect; that the court costs, referee's fees, receiver's fees, reporter's fees, and any general overhead charges should not be paid from such fund, but should be paid from the amount realized from the sale of the Tipken leaseholds and equipment; that the receiver's report is unfinished and incorrect, and the amount directed by the court to be paid to the court clerk by the receiver as proceeds of the oil and gas from the Tipken properties is incorrect and too small."

In support of the first contention advanced Garey relies upon the following provisions in his mortgage:

"The mortgagor especially covenants and agrees, anything in this mortgage to the contrary notwithstanding, that this mortgage is security not only for the principal indebtedness hereinabove specifically set forth, but also all other indebtedness, obligations and liabilities of the mortgagor to the mortgagee, now existing or hereafter arising in connection with the properties herein described, and also for any other sums or amounts which mortgagee shall or may become liable to pay for the protection of this security, or which the mortgagee may become obligated to pay on behalf of the mortgagor, in connection with the properties herein described, whether by agreement or operation of law.

"Now, therefore, in order to secure the above indebtedness as evidenced by said note and all extensions, renewals, substitutions and changes in form thereof, together with all interest, charges and fees thereon, and as well also to secure the payment of all other indebtedness, obligations and liabilities of the mortgagor to the mortgagee, now existing or hereafter arising in connection with the properties or contracts described in this mortgage, and as well also to secure any other sums and amounts for which the mortgagee shall or may become liable to pay for the protection of this security, and to secure as well any indebtedness which the mortgagee may become obligated to pay on behalf of the mortgagor, whether by agreement or by operation of law, in connection with the properties and contracts herein described. . . . "

Garey contends that the foregoing provision in the mortgage of August 22, 1939, was intended to and did include the amounts which he subsequently loaned to the Yorkan Production Corporation which were represented by notes and secured by mortgages dated October 12 and November 20, 1939, respectively, and by reason thereof the entire amount represented by said notes and mortgages constituted a superior and paramount lien on the premises and should have been held to have excluded the liens of all the claimants involved.

In support of this contention our attention is directed to 41 C. J. 526; Jones on Mortgages, sec. 526; Paschal & Bros. v. Bohannan, 59 Okla. 139, 158 P. 365; Eltopia Finance Co. v. Colley, 126 Wash. 554, 219 P. 24; First National Bank of Corsicana v. Zarafonetis (Tex. Civ. App.) 15 S. W. 2d 155, and several other decisions to the same effect. An examination of the cited cases will reveal that they are authority for the rule that a mortgage to secure future advances will generally be held prior to any subsequent liens. Such rule, however, is not applicable to the situation here presented. While the mortgage of August 22, 1939, contained a provision to secure any future advances that might be made thereunder, it contained no provision obligating Garey to make any such advances, and on October 12, 1939, and November 20, 1939, when Garey loaned the Yorkan Production Corporation additional sums, he did so as independent transactions taking notes and mortgages as security therefor. In the meantime, the rights, if any, of the respective lien claimants had intervened and attached to the mortgaged property. It is a well recognized rule that in such situation, where it is optional with the mortgagee whether he will make any future advances, he cannot do so after intervening liens have attached and thereby defeat such liens. See Jones on Mortgages (8th Ed.) § 454, p. 586; First National Bank of Coyle v. Horsley, 174 Okla. 83, 49 P. 2d 495; Davis v. Carlisle, 142 Fed. 106. The court recognized the priority and superiority of the first mortgage lien of Garey over the liens of the materialmen and subordinated the second and third mortgage liens of Garey thereto. In so doing the court appears to have proceeded under the well recognized exceptions above cited. The contention of Garey that his mortgages were superior to any and all of the liens of the respective claimants cannot be sustained.

Garey next contends that the liens allowed for labor, overtime and trucking in favor of O. H. Barnes, L. L. Grimes, C. A. White, C. D. Parsons, Chaney Hawkins, S. Buchanan, and W. C. Kennedy were contrary to law for the reason such parties were not shown to have any lienable claims or else are without any evidence to support them, and that all of said liens so allowed were contrary to law for the reason that none were shown to have filed a lien claim or statement in the district court of Lincoln county. Each and all of the above named parties have neglected to file any brief here in support of the judgments and liens allowed in their favor, and for this reason could well be reversed under the rule applicable in such situation. See Hill v. Severin Tire & Supply Co., 188 Okla. 48, 105 P. 2d 1064. We have examined these respective liens and find that two of them were allowed for overtime under Federal Wage and Hour Act which was error, see Pace v. National Bank of Commerce of Tulsa, 190 Okla. 503, 125 P. 2d 178; and that several of said claims were based upon salaries and expenses which are not allowable as labor liens (see American Tank & Equipment Co. v. T. E. Wiggins, Inc., 170 Okla. 504, 42 P. 2d 115; Williams v. Black, 50 Okla. 384, 150 P. 879); and one of said liens was on property other than that here involved and therefore not allowable, and that none of the liens so allowed appear to have been filed in Lincoln county within the time provided by law and hence should have been disallowed. See Pacific Petroleum Co. v. Sunbeam Oil Co., 176 Okla. 293, 54 P. 2d 1054; Newman v. Kirk, 164 Okla. 147, 23 P. 2d 163.

As to these liens the contention of Garey is well taken and the judgment of the court will be modified so as to eliminate the same as liens against the property involved.

Garey next contends that the liens of Rufus Lillard Company, Continental Supply Company, Lillard and Clark Well Servicing Company, Halliburton Oil Well Cementing Company, Woods Machine Works, and Bell Lumber Company should have been disallowed and denied for the reason that the lien of Rufus Lillard Company was allowed for $1,388.88 when the claim was for

$1,313.68, and for the reason that the evidence does not support the finding of the lien in favor of said claimant; and that the lien of Woods Machine Works should have been for $109.60 instead of the sum allowed; and that Bell Lumber Company is not shown to have filed a lien in Lincoln county and under no circumstances to have had a lien for more than $40.80. The lien of Lillard and Clark Well Servicing Company is challenged on the ground that the evidence does not support the finding of the court relative to the amount due within the allowable period for establishing liens. With reference to the Continental Supply Company, Garey contends it did not offer in evidence any lien statement, and that the stipulation with reference thereto is not binding on Garey, and says that assuming that said company effected its lien as per the stipulation, it has no lien for any item furnished prior to November 9, 1939. A somewhat similar contention is made with reference to the lien of Halliburton Oil Well Cementing Company. The lien claims of each of the above-named parties appear from the record to have been filed in Lincoln county and to have been recognized by Yorkan Production Corporation upon the properties here involved, and the finding of the court thereon is supported by evidence in each case. As to these liens, we find the judgment of the trial court was correct, except as to the amount of the lien of Rufus Lillard Company later considered herein.

Garey next contends that the proceeding should have been dismissed for failure to show a compliance with the provisions of the Intangible Tax Law (68 O. S. 1941 § 1515). The trial court specifically found that the provisions of this law had been complied with and there is no showing to the contrary. Under these circumstances we will accept the finding of the trial court. See Correll v. Holt, 191 Okla. 622, 132 P. 2d 953.

We next consider Garey's contention of error in fixing the amount of his first mortgage lien on the Tipken lease-holds. Garey contended for the balance shown by the note and mortgage of $34,690 and $3,469 attorney's fee. The trial court allowed only $29,353.50 and attorney's fee of $2,935.25, thus reducing the principal by $5,337.50 with corresponding reduction in the attorney's fee. This reduction was decreed by the trial court on its conclusion that a sum of $5,337.50 theretofore received by Garey and applied on other indebtedness should have been applied on the first mortgage debt to produce the above mentioned reduction.

This question is settled by deciding whether Garey properly or improperly applied said $5,337.50 in the first instance. Essential facts are that, aside from all mortgage indebtedness for money loaned, Yorkan owed Garey $5,337.50 for attorney's fees and expenses; that Yorkan agreed that Garey should receive oil run proceeds and apply same on his mortgage debt and other obligations; that between January 8, 1940, and March 22, 1940, Garey so received more than $10,000; that he returned a small portion thereof to Yorkan for operating expenses, credited about $5,000 on the mortgage debt, and credited the sum of $5,337.50 on the debt for attorney's fee and expenses, thereby liquidating that last item. All these applications were verified at the time they were made by letter to Yorkan Production Company and were not objected to, but were consented to. Most of these transactions occurred before this suit was filed, and all were completed within a few days after suit was filed and long before Garey and the oil purchaser were made parties and oil payments ordered made to the receiver. The lien claimants, of course, had no lien on the oil and gas produced. Stanolind Crude Oil Purchasing Co. v. Busey, 185 Okla. 200, 90 P. 2d 876. The above transaction, then, is in the nature of one concerning property to which lien claimants on the leasehold have no claim and a transaction completed in the most part before the lien claimants asserted their claim to the other

property on which they did have a lien. It is much the same as if Yorkan had itself collected the oil run proceeds before this suit was filed, and paid this sum of $5,337.50 to Garey for services theretofore rendered, or directed the specific application which was made.

We cannot see that plaintiff lien claimants have any just right to question or disturb the application of this item, as it was in the first instance made by Garey upon the agreement, and with the acquiescence, of Yorkan. No authorities are cited to a different conclusion. It seems the rule would be clearly correct that in case of a producing lease, where the leasehold and equipment was subject to labor and materialmen's liens under the statute, nevertheless the owner could continue to sell the oil runs and make any desired application of the proceeds until interfered with by some appropriate court order, leaving to the lien claimants their complete right to proceed against the leasehold itself and the equipment, that being the specific property and the only property to which their lien attaches.

It follows that the trial court erred as to this item. Proper correction can be made by returning to Garey $5,871.-25 ($5,337.50 and 10% thereof, $533,-75, as additional agreed attorney's fee) out of the $6,007.02 paid to the sheriff on the foreclosure sale of the Tipken leaseholds. This re-establishes the figures substantially as they would have been if the judgment had fixed the correct amount of the first mortgage lien, and the remaining balance of the said sum paid the sheriff will be at least as much as would have been required if the first mortgage amount had been correctly determined.

The final question presents the controversy as to the funds in the hands of the receiver received by him from sale of the oil runs during the time he operated the leasehold as receiver. Garey contended he should have such money to apply in part payment of his remaining mortgage indebtedness. After the foreclosure sale aforesaid and confirmation thereof, Garey filed his motion (April 7, 1942) to so receive this item of money held by the receiver. Lien claimants answered and opposed such motion and contended in effect (1) that the court should direct the receiver to distribute said funds to the other judgment lien creditors, or in the alternative (2) that if the lien claimants had no lien on such oil sale proceeds, the same should be paid to Garey upon the requirement that he credit same as if theretofore paid on his first mortgage so as to require Garey to pay the same amount to the sheriff as additional payment on Garey's bid at the foreclosure sale.

The trial court was persuaded that the second so-called alternative contention of the lien claimants was sound and it was so ordered.

The effect of that conclusion seems to be that while the lien claimants have no lien on this fund, it should be paid to Garey and be by him paid to the sheriff or back to the receiver to be applied on the liens of the lien claimants. So far as Garey is concerned, the result is the same as if the receiver had been directed to pay the money to the lien claimants.

The foreclosure sale was already a closed item. It had been confirmed and Garey had paid the sheriff the difference between the bid and the adjudicated amount of the first mortgage. The lien claimants had no lien on this money from oil sales, therefore no right to have it applied on their liens. We cannot follow this trial court conclusion which, though by slight indirection, actually applies this money upon the liens, in result the same as if the liens applied to oil runs. We must hold that when lien claimants have enforced their lien as fully as may be against the corpus of the leasehold itself and its equipment, they cannot go further and impress their lien on the oil runs or proceeds therefrom.

We affirm that portion of the order

requiring the payment out of this fund to Garey, but modify the order by eliminating the requirement that Garey apply same upon his first note and mortgage or pay an equal amount back to the receiver to be applied on the bid made at the former foreclosure sale. This leaves the amount paid Garey out of this fund to be applied by him on the sums due him other than those evidenced by the amount of the first note and mortgage.

The trial court ordered the receiver to pay out of this fund, the operating expense of the leasehold, and certain costs including a certain percentage of the referee's fee, court reporter's fee and general overhead of the receiver. Garey urges this as error. It seems apparent that some of these charges were improperly allowed out of this fund, but we doubt that the amount thereof would justify the detailed audit effort necessary to segregate the items. Some of the allowance was clearly proper out of this fund, and upon the whole we conclude the order should be affirmed in that particular.

For the reasons above stated, the judgment is modified by striking therefrom the liens of O. H. Barnes, L. L. Grimes, C. A. White, C. D. Parker, Chaney Hawkins, S. Buchanan, and W. C. Kennedy, and modifying the judgment lien in favor of Rufus Lillard Company to constitute a lien for the sum of $1,313.68, with interest and attorney's fee; and the judgment is further modified by increasing by or in the sum of $5,337.50 the amount fixed as Garey's first mortgage lien to correct the error therein above specifically noticed; such correction to be made effective by returning to Garey $5,871.25 out of the sum paid in on the foreclosure sale as above set out; and the judgment is further modified by striking from the order and judgment above noted the requirement that Garey give or note any further credit on his first mortgage lien or return to the receiver the oil run monies to be applied as addition to the bid at foreclosure sale; and as so modified

the judgment is in all other respects affirmed.

GIBSON, C. J., HURST, V. C. J., and RILEY, OSBORN, WELCH, CORN, and DAVISON, JJ., concur.