ANTRIM LBR. CO. v. CLAREMORE FEDERAL SAV. & LOAN ASS'N.

No. 34027.    April 3, 1951.

Rehearing Denied April 17, 1951.

*230 P. 2d 274.*

A. Lee Battenfield and Harve N. Langley, Pryor, for plaintiff in error.

P. W. Holtzendorff, Claremore, for defendant in error.

HALLEY, J. The only issue involved in this appeal is the priority of liens of the Antrim Lumber Company, which furnished materials for the erection of a dwelling on land in Pryor, Oklahoma, and a prior mortgage on the same land to Claremore Federal Savings & Loan Association, hereinafter referred to as "mortgagee". The admitted facts from which this controversy arose were substantially as follows:

R. L. Adams and wife owned certain lots in Pryor, Oklahoma, which were unimproved. They executed a mortgage to the mortgagee in the sum of $2,500, which was recorded November 30, 1945. They executed a second mortgage on July 12, 1946, for $600, recorded July 13, 1946. October 15, 1946, they executed a mortgage for $2,500, recorded October 17, 1946, covering only lot 23, block 27, of the lots covered by the prior mortgages.

The Antrim Lumber Company furnished certain materials for the erection of a residence on lot 23. The first materials were furnished October 26, 1946, and the last on March 19, 1947. Antrim Lumber Company filed a lien statement on May 24, 1947, in which it appeared that R. L. Adams and wife owed $1,153.37 for materials.

The mortgagee filed two actions to foreclose its mortgages, making Antrim Lumber Company a party defendant. Antrim Lumber Company filed an answer and cross-petition seeking to have its materialman's lien declared superior to those of the mortgagee, and asking judgment for $1,153.37 against the mortgagor and the mortgagee under the claim that the $2,500 mortgage covering lot 23 represented what is commonly termed a "construction loan" and that it was the duty of the mortgagee to see that its claim for materials was paid out of the proceeds of the loan.

On March 21, 1947, the court rendered judgment for the plaintiff and held that the mortgage liens were superior to that of Antrim Lumber Company, but also rendered judgment for the latter against R. L. Adams et ux., making that judgment inferior to that for the mortgagee. No contractor was involved. R. L. Adams dealt directly with the mortgagee and with Antrim Lumber Company.

It will be noted that the mortgage for $2,500 covering lot 23, on which a residence was to be constructed, was recorded on October 17, 1946, which was prior to the time the Antrim Lumber Company furnished its first materials on October 26, 1946. In Basham v. Goodholm & Sparrow Investment Co., 52 Okla. 536, 152 P. 416, this court announced the general rule relative to the priority of a mortgage over a materialman's lien as follows:

"Under the laws of this state a mortgage duly executed and recorded takes precedence over a materialman's lien accruing after the recording of such mortgage, even to the extent of attaching to improvements placed upon the mortgaged premises afterwards by the materialman."

However, there have been decisions decreeing a materialman's lien superior to that of a prior recorded mortgage, under certain circumstances, which we will discuss later.

Antrim Lumber Company submits two propositions. The first is that the judgment of the trial court is clearly against the weight of the evidence, and that this being an equitable action, the court should review the evidence and the record. It is further claimed that the trial court should have found and adjudged that the mortgage secured a "construction loan" and that the Antrim Lumber Company should have been given a judgment against the mortgagee for its material bill and a prior lien on the real property involved to secure its payment.

We have considered all of the evidence, and find that both the mortgagee and Antrim Lumber Company had had previous dealings with R. L. Adams and that both of them considered him entirely trustworthy. The mortgagee accepted his word that he intended to erect a five-room brick dwelling on lot 23, which was then vacant and valued at from $150 to $200. The mortgagee agreed to make him a loan upon his statement that he intended to erect a dwelling on lot 23. The mortgagee apparently made no inspection as to the progress of the construction and required of Adams no report as to what material and labor bills he had paid at any time. It had no agreement that it would hold the proceeds of the loan and disburse them only as the construction work progressed to its satisfaction. The only evidence even slightly indicating that the mortgagee elected to pay only as the building progressed is the fact that the money was paid to R. L. Adams in seven different installments. However, there is no evidence that the mortgagee ever failed to pay directly to Adams the full amount requested by him at any time. At one time he reported difficulty in securing materials, and advised the mortgagee that he wanted cash to pay when he found the right materials. There is no evidence that the mortgagee ever required the submission of any receipted bills for labor or materials before paying to R. L. Adams whatever amount he requested.

Mr. Brown, local manager for Antrim Lumber Company, testified that in October and November of 1946, R. L. Adams paid $350 on his material bill due the Antrim Lumber Company. He admitted that when he first approached the mortgagee and advised it that the Antrim Lumber Company material bill had not been paid in full, the mortgagee had already paid the entire amount of the loan directly to Adams. There is no evidence in the record that the Antrim Lumber Company made any effort to notify the mortgagee of its claim for materials until after the mortgagee had already paid all of the proceeds of the loan directly to R. L. Adams. Had the mortgagee been notified of the unpaid material bill before it had paid the entire proceeds of the loan to Adams, and had it disregarded such notice, then a different situation would have been presented. It does not appear that R. L. Adams advised the lumber company that the mortgagee was making him a loan to enable him to build the residence.

Do the foregoing facts support the contention that the mortgagee made a construction loan, requiring it to hold the proceeds of the loan until satisfied that all labor and material claims had been paid in full? Antrim Lumber Company has cited the case of Home Savings & Loan Ass'n v. Sullivan, 140 Okla. 300, 284 P. 30. In the second syllabus of that opinion, the law relative to the priority of mortgages and materialmen's liens is expressed as follows:

"Where a real estate mortgage is recorded before a building is commenced on said real estate, the mortgagee has a prior lien to that of materialmen, although the mortgagee had notice that a building was to be constructed with the money secured from the mortgage. But, where the contract between the parties, the conduct of the mortgagee, and the circumstances surrounding the transaction, show that there was an agreement and understanding between the owner and the mortgagee that a building should be constructed before the money was paid, and the mortgagee had a right to refuse payment of the mortgage until the building was constructed, materialmen, who furnish material for the construction of said building, after the recording of the mortgage, but before the money is paid, have a prior lien to that of the mortgagee."

In that case, the court made the following finding:

"The money to be paid out under this construction loan was to be held by the Home Savings & Loan Association . . . to be paid to the various claimants for material furnished and work done in the course of construction of the building."

The above finding shows clearly that the facts in that case were quite different from those in the instant case. In the case under consideration there was lacking the reservation by the mortgagee to hold the proceeds of the loan and pay it out as it desired and as the building progressed. The building in the instant case was never completed, but the mortgagee had already paid out all of the money loaned to the mortgagor, without notice of the outstanding claim of Antrim Lumber Company. No reason or excuse is given by Antrim Lumber Company for its failure at least to notify the mortgagee that it was furnishing materials for the erection of the residence involved, and since the mortgage was recorded prior to the time when the first materials were furnished, the general rule above quoted is effective to give the mortgage holder a prior lien to that of one who furnished materials with actual and constructive notice that the mortgagee was loaning to the mortgagor certain funds for the erection of a residence on the land covered by the mortgage.

The manager for Antrim Lumber Company testified in regard to his first conversation with R. L. Adams as follows:

"Q. Did you on the day that he approached you, about October 26, 1946, agree to furnish those needed materials and supplies for the building of this residence? A. I did.

"Q. Before you agreed to do that, did you make any investigation to convince you that Mr. Adams was not mistaken in the representation he had made to you that the Claremore Federal Savings and Loan Association would furnish the money? A. I didn't check that, for we had had previous dealings with Mr. Adams, and he had never given us any cause to doubt his word in the matter."

We cannot agree that the loan involved here constituted what is often referred to as a "construction loan", because there is no evidence of any reservation on the mortgagee's part, and no evidence that the mortgagee had notice that some of the materials had not been paid for when it disbursed the proceeds of the loan to the builder.

We find it unnecessary to consider whether the findings and judgment of the trial court should be considered under the rule applicable to law actions of equitable cognizance. The judgment of the trial court is not clearly against the weight of the evidence and is supported by substantial evidence, and is therefore affirmed.

ARNOLD, C.J., LUTTRELL, V.C.J., and WELCH, CORN, GIBSON, DAVISON, and O'NEAL, JJ., concur. JOHNSON, J., who presided at the trial in the lower court, not participating.