Guy THOMPSON et al., Plaintiffs in Error,

v.

C. R. SMITH, Defendant in Error.

Nos. 40118, 40119.

Supreme Court of Oklahoma.

Nov. 1, 1966.

Winfrey D. Houston, Fitzgerald & Houston, Stillwater, for plaintiffs in error Bradley Plumbing & Electric Co., L. K. Wilson Sheet Metal Co., Sapulpa Brick & Tile Corp., Lee Co., Earl Wheatley, and Kerns Trucking Co.

Robert M. Murphy, Stillwater, for plaintiff in error Hamilton Tiling Service.

Swank & Swank and F. J. McDonald, Stillwater, for defendant in error.

HODGES, Justice.

This action presents two cases which by agreement of the parties were consolidated for trial and appeal to this court, together with three other cases previously decided by this court and reported in Smith v. Thompson, Okl., 402 P.2d 882. The cases presently being considered involve a controversy as to priorities between a mortgagee and holders of mechanics' and materialmen's liens.

By this action, C. R. Smith, referred to herein as plaintiff, sought to foreclose his two mortgages against the defendant Guy Thompson and his wife and to establish priority of his mortgages over mechanics' and materialmen's liens of the other defendants, referred to herein as lienholders. The lienholders then filed a cross action for their labor and materials against the defendant Thompson.

The trial court awarded a judgment in favor of the plaintiff and ordered foreclosure of the mortgages and the liens. The defendant Thompson did not appeal from this judgment and the amounts of the judgment are not in dispute.

The controversy on appeal is between the plaintiff and the lienholders on that part of the trial court's judgment determining priority of liens. The trial court determined that the plaintiff's mortgages were superior to the claims of the lienholders. From that part of the judgment the lienholders have appealed.

It appears that the defendant Thompson is insolvent and that the sale of the properties did not bring a sufficient amount to pay the claims of the lienholders.

The plaintiff was the original owner of the two lots in question, hereinafter referred to separately as Job 44 and Job 46. The defendant Thompson was engaged in the business of the construction of new houses.

An agreement was entered into between the plaintiff and the defendant Thompson whereby the plaintiff was to sell the lots to the defendant Thompson, and the plaintiff was to furnish the financing for the construction of houses on the lots. The defendant Thompson under the agreement was to build the two houses secured by two mortgages to the plaintiff.

In February, 1960 two deeds were executed by the plaintiff for the lots to the defendant Thompson. On April 25, 1960 a mortgage was recorded from the defendant Thompson to the plaintiff on the lot referred to as Job 44. On March 1, 1960 a mortgage was filed for record from the defendant Thompson to the plaintiff on the lot referred to as Job 46. These mortgages are the basis for the plaintiff's action in the present case. The labor expended and the materials furnished on the construction of the new houses at the request of the defendant Thompson are the basis of the claims by the lienholders.

The lienholders present two propositions for reversal:

## PROPOSITION I

"The mortgagee, C. R. Smith, defendant in error, retained the option to made advances. The Trial Court therefore erred in granting first priority on the mortgages."

The lienholders argue that the disbursement of monies to be advanced under the mortgages was exclusively controlled by the discretion, whim or caprice of the plaintiff; that plaintiff had no obligation to made advances under the mortgages and used his mortgages "as a sword instead of a shield" to build up his security at the expense of the lienholders who actually furnished the value.

■ It is the contention of the lienholders that retention by the plaintiff of such discretion in disbursing the proceeds of the loan makes the prior recorded mortgage subordinate and inferior to their liens for work and materials. We agree that the lienholders would be entitled to priority *if*

the plaintiff had reserved the option to pay the proceeds of the loan as he saw fit or to refuse payment until construction had been completed. See Antrim Lumber Co. v. Claremore Federal Savings & Loan Ass'n, 204 Okl. 387, 230 P.2d 274; and Garey v. Rufus Lillard Co., 196 Okl. 421, 165 P.2d 344.

In the present case, however, the plaintiff did not reserve this option. The evidence establishes that when the construction progressed to a designated state the obligation of the plaintiff to advance the money under the mortgages became mandatory. The defendant Thompson testified:

"Q. Now, state to the Court, what your oral agreement was with him regarding the lots and the financing of these houses?

A. We had an agreement that when I got so much work done, when I got the foundation done he would pay me so much money, and when I raised the walls he would pay me so much money, and when I got the roof on he would pay me so much money and when the sheet rock was delivered on the job I was to get the rest of the money."

In Local Federal Savings & Loan Ass'n v. Davidson & Case Lumber Co., 208 Okl. 155, 255 P.2d 248, the obligation of the mortgagee was to advance certain percentages of the loan at three levels of construction. In upholding the priority of the mortgage over the claims of materialmen, we said:

"Where real estate mortgage is recorded before improvements on land are commenced, the mortgagee has a prior lien to that of materialmen, even though mortgagee knew that a building was to be constructed with money secured by the mortgage. Where owner and mortgagee have not agreed that building should be constructed before the money was paid, and mortgagee has not reserved the right to refuse payment of money secured by mortgagee until improvements were completed, materialmen who furnished ma-

terials after recording of mortgage but before money was paid do not have a prior lien to that of mortgagee."

In a more recent decision, Tulsa Ready-Mix Concrete Co v. Dale Carter Lumber Co., Okl., 381 P.2d 849, the principle of priority based upon the obligatory or optional nature of the advances of a mortgage loan, as above set out, was reaffirmed. We held in that case that where the mortgagee was "obligated to distribute proceeds of the loan upon stated conditions being complied with" the prior recorded mortgage was to be given priority over subsequent liens of materialmen.

The lienholders cite the case of Home Savings & Loan Ass'n v. Sullivan, 140 Okl. 300, 284 P. 30, as precedent for establishing the priority of their liens. In the Sullivan case the liens of materialmen were held to be entitled to priority over a prior recorded mortgage. But it is clear that the holding is restricted to those situations where it is shown that there was "an agreement and understanding between the owner and the mortgagee that a building should be constructed before the money was paid, and the mortgagee had a right to refuse payment of the mortgage until the building was constructed." The case is therefore not in conflict with the cases cited above nor with our holding herein.

The agreement of the plaintiff to make the future advances being mandatory, we conclude that the trial court correctly rejected this contention of the lienholders.

## PROPOSITION II

"The Trial Court erred in its finding that C. R. Smith, defendant in error, recorded his mortgages prior to the commencement of improvements upon the premises involved."

We have frequently held that a prior recorded mortgage takes precedence over a materialman's lien accruing after the recording of such mortgage, even to the extent of attaching to the improvements placed upon the mortgaged premises after-

wards by the materialman. Antrim Lumber Co. v. Claremore Federal Savings & Loan Ass'n, 204 Okl. 387, 230 P.2d 274; Basham v. Goodholm & Sparrow Inv. Co., 52 Okl. 536, 152 P. 416. The lienholders contend that this rule is limited to those mortgages which are recorded prior to the commencement of construction of the building, citing Industrial Tile Co. v. Home Federal Savings & Loan Ass'n, Okl., 331 P.2d 918.

In the Industrial Tile case, we held that under 42 O.S.1961, § 141, liens for labor and material attach as of the date of the commencement of the building and not as of the particular date of the furnishing of the material or performance of the labor. Therein we said:

"The clear import of the words used in Sec. 141, supra, is that any person who shall, under contract with the owner of the land, perform labor or furnish material for the erection of any building thereon shall have a lien upon the land and building; and that such liens shall be preferred to all encumbrances which may attach to or upon such land, buildings or improvements or either of them subsequent to the commencement of the building. * * *" 331 P.2d at 920.

Subsequent to the filing of the appeal in the instant case, we overruled our holding in the Industrial Tile case. American-First Title & Trust Co. v. Ewing, Okl., 403 P.2d 488. However, the rule of law announced in the American-First case was expressly restricted to prospective application and has no bearing upon this controversy.

In the instant case the question of priority of liens must be resolved by looking to the dates the mortgages were recorded in relation to the date of the *commencement of construction* of the houses on the two lots involved. In this respect the evidence was conflicting and presented a factual determination for the trial court in an equitable proceeding.

It is undisputed that on Job 44 the mortgage of the plaintiff was recorded on April

25, 1960 and that on Job 46 the plaintiff's mortgage was recorded on March 1, 1960. But it is the contention of the defendant lienholders that the evidence clearly shows the construction of the houses on both lots was commenced before the recording dates of the plaintiff's mortgages. They particularly urge consideration of the testimony of Robert A. Brown, one of the partners of lienholder, Bradley Plumbing & Electric Company, who testified that on April 21, 1960 he furnished plumbing materials and labor on Job 44, which was four days before the plaintiff's mortgage was recorded. Also, to show the continuity of construction on this house, they direct our attention to the testimony of Kermit B. Ingham (who is not a lienholder herein) who stated he delivered materials on April 26, 1960.

On Job 46 the lienholders again submit the testimony of Robert A. Brown who testified from his records that the plumbing materials were first furnished on March 1, 1960. They urge that this testimony was corroborated by other lienholders who testified to the delivery of materials before and after that date, showing a normal progress of construction in building the house. The lienholders also refer to the testimony of Kermit B. Ingham where he stated that he furnished ready mixed concrete and 3/8 inch steel on February 19, 1960 for Job 46.

The lienholders also point out that the dates of delivery of their materials were confirmed by the builder, the defendant Thompson.

The plaintiff testified that on Job 44, after a ten year old house had been destroyed by fire, he made a loan to the defendant Thompson for the construction of a new house. Plaintiff further testified that he made a personal inspection of the lot on the date when he recorded his mortgage and that "there was no new construction going on at that time and they were still wrecking the other house." Plaintiff also testified that he did not make the first partial payment on the loan to defendant

Thompson for construction completed until April 29, 1960.

The lienholders assert that construction of the house on Job 44 actually commenced with the tearing down of the house that burned and the removal of the debris. However, the evidence fails to establish any connection, contractual or otherwise, between the tearing of the burned building and the construction of the house involved in this dispute.

On Job 46 the plaintiff testified that at the time he filed his mortgage no labor or material had been performed or furnished and that "there was no evidence of anything being done on that, it was in grass." He testified that he paid the first installment for the construction on this job on March 25, 1960. The fact that the plaintiff made frequent visits to the "jobsites" was confirmed by the testimony of the defendant Thompson.

The plaintiff also argues that the testimony of Robert A. Brown did not reflect that the materials were actually furnished on those dates, but that it was merely a memorandum reflecting an oral contract to furnish plumbing for the two houses. Plaintiff also urges that the testimony of Kermit B. Ingham presented nothing more than an agreement to furnish at a later date the materials or that such materials were furnished on one of the several other houses being constructed by defendant Thompson.

There were no delivery tickets introduced in evidence, which were signed by the defendant Thompson or someone on the job, showing that the materials were actually delivered and accepted prior to the recording dates of the mortgages. Also, at the time these two houses were being constructed there were other houses in the vicinity under construction by the defendant Thompson for which the lienholders also supplied materials and performed labor. Apparently with some witnesses there was a confusion as to addresses of each house and/or the designation of the job numbers. The trial court may have re-

solved the conflicting evidence by determining that some of the materials or labor were furnished or performed on other houses of the defendant under construction which were not involved in this action.

■■ In cases of equitable cognizance, there is a presumption in favor of the findings of the trial court, and where such findings are not clearly against the weight of the evidence, the judgment will be affirmed. Anglin v. Edwards and Gauntt Oil Co., Okl., 418 P.2d 647; Mock v. Stricklin, Okl., 315 P.2d 247.

■■ Although the trial court did not make specific findings of fact, there is inherent in the judgment of the trial court a finding that the mortgages of the plaintiff were recorded prior to the commencement of construction of the two houses. Upon this issue the evidence was conflicting. This issue presented a factual question to be determined by the trial court.

In First National Bank of Bethany v. Eagan, Okl., 263 P.2d 157, the issue was a factual controversy between a mortgagee bank and lienholders, both claiming priority of their lien. In affirming the judgment of the trial court for the lienholders we said:

"Thus, it is obvious that there is a conflict in the testimony on the pivotal, or controlling issue, which was to be determined by the trier of the facts who evidently, by rendering judgment against the Bank, gave credence to and believed the version of the other lien holders and Hakes.

\* \* \* \* \* \*

"Where evidence in case of equitable cognizance is conflicting, trial court's finding thereon will not be disturbed on appeal unless clearly against the weight thereof."

■■ The trial court evidently gave more credence to and placed more weight upon the testimony of the plaintiff than upon the conflicting evidence of the defendants. The determination of the credibility of witnesses and the effect and weight to be given to conflicting or inconsistent testimony are matters peculiarly within the province of the trier of fact. Clark v. Addison, Okl., 311 P.2d 256; Fane Development Co. v. Townsend, Okl., 381 P.2d 1012. After having carefully examined and reviewed the record, we cannot say the finding and judgment of the trial court are against the clear weight of the evidence.

Judgments affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN and BERRY, JJ., concur. cur.