The LIBERTY NATIONAL BANK & TRUST COMPANY OF OKLAHOMA CITY, Appellee,

v.

KAIBAB INDUSTRIES, INC., the Flintkote Supply Co., More Insulation & Supply, Inc., Turner Roofing & Sheet Metal Co., Inc., General Electric Company, Air Comforts, Inc., Samuel E. Brown, d/b/a Brown Plumbing Company, W & W Painting & Drywall, Inc., Stanley R. Meuller, and Ed Herbert d/b/a Adventurer Manufacturing Co., Appellants.

No. 49017.

Supreme Court of Oklahoma.

Dec. 19, 1978.

Rehearing Denied March 19, 1979.

Thomas A. Wallace, Val R. Miller, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for appellee.

William R. Grimm, Barrow, Gaddis & Griffith, Tulsa, for appellants, Flintkote Supply Co., Kaibab Industries, Inc.

Robert F. Bourk, Oklahoma City, for appellant, Flintkote Supply Co.

J. Charles Shelton, Groves, Black & Shelton, Tulsa, for appellant, Turner Roofing & Sheet Metal Co.

Paul F. McTighe, Jr., Tulsa, for appellant, Air Comforts, Inc. and Samuel E. Brown.

C. Max Speegal, Service & Speegal, Edmond, for appellant, Ed Herbert d/b/a Adventurer Mfg. Co.

I. E. Chenoweth, Tulsa, for appellant, More Insulation and Supply Co., Inc.

Richard Bailey, McClelland, Collins, Sheehan, Bailey, Bailey & Belt, Oklahoma City, for appellant, General Electric Co.

Charles C. Dunn, Tulsa, for appellant, W & W Painting & Drywall, Inc. and Stanley R. Meuller.

LAVENDER, Vice Chief Justice:

The Liberty National Bank & Trust Company of Oklahoma City (lender) was the interim construction lender on an apartment complex at Sapulpa, Oklahoma. Principal documentation consisted of promissory note, real estate mortgage covering the project, and a loan agreement. Lender sought to foreclose its mortgage lien. Trial court entered judgment determining lender's mortgage lien to be superior to materialmen's liens. Those materialmen's lien claimants appeal (lien claimants).[1]

Lien claimants argue the mortgage lien priority fails as to them for (1) construction commenced before the filing of the mortgage lien, (2) construction loan advances were optional rather than obligatory, (3) lender estopped to assert the priority of its lien, and (4) lender subject to a construction fund trust, either by statute or equity. Reversible error also contended in the trial court's exclusion from the evidence a moving permit on a dozer and an invoice as to labor performed showing dates said to establish the commencement of construction.

■ Parties agree if construction commenced prior to filing of the mortgage lien, then the mortgagee lender is charged with full notice of lien claims of contractors, and

---

1. Entities appealing and denoted as "lien claimants" are: Kaibab Industries, Inc., The Flintkote Supply Co., More Insulation & Supply, Inc., Turner Roofing & Sheet Metal Co., Inc., General Electric Company, Air Comforts, Inc., Samuel E. Brown, d/b/a Brown Plumbing Company, W & W Painting & Drywall, Inc., Stanley R. Meuller, and Ed Herbert, d/b/a Adventurer Manufacturing Co.

subcontractors, that could include material-men. *American-First Title & Trust Company v. Ewing, Okl., 403 P.2d 488 (1965)*. See also *Thompson v. Smith, Okl., 420 P.2d 526 (1966)*. Oral findings of the trial court determined construction did not commence prior to recording the lender's mortgage lien. Lien claimants believe that finding is against the weight of the evidence. Individuals performing the dirt work on the site preparation, or observing that work, testified usually with some uncertainty as to the exact date, but would place the commencement at a time prior to the recording date of January 29, 1974. The building inspector for the City of Sapulpa observed construction activities on the site prior to the issuing of the building permit dated February 5, 1974. He could not name a date of the construction activity but suggested probably ten days prior to the issuing of the building permit. Trial court weighed this and other evidence. Greater weight was given to the testimony of the licensed engineer making a site inspection for the lender and certifying under date of January 30, 1974, construction had not commenced. He indicated his inspection that date found the site in the same condition as previously in December 1973, when he examined in conjunction with a topographical survey. His pre-construction inspection on January 30, 1974, consisted of walking over the property, making a visual examination over a period of some fifteen or twenty minutes, and finding no evidence of previous construction. He saw no bulldozer on location and found the site overgrown with grass and weeds.

"In cases of equitable cognizance, there is a presumption in favor of the findings and judgment of the trial court, and same will not be set aside unless clearly against the weight of the evidence." *Thompson, supra.* We have reviewed the record including the testimonial conflict on the fact issue as to when work commenced. The presumption favors the trial court's findings. That finding is not clearly against the weight of the evidence.

■ For the mortgage lien to be superior to the lien claimants, the advances under the mortgage lien must be obligatory on the lender rather than permissive. *Tulsa Ready-Mix Concrete Co. v. Dale Carter Lbr. Co., Okl., 381 P.2d 849 (1963)*. Case law of this jurisdiction relating to this problem is discussed in *Thompson, supra, p. 528* including holdings in *Antrim, Davidson,* and *Sullivan* opinions.[2] In *Thompson,* we said:

"In a more recent decision, *Tulsa Ready-Mix Concrete Co. v. Dale Carter Lumber Co.,* Okl., 381 P.2d 849, the principle of priority based upon the obligatory or optional nature of the advances of a mortgage loan, as above set out, was re-affirmed. We held in that case that where the mortgagee was 'obligated to distribute proceeds of the loan *upon stated conditions being complied with*' the prior recorded mortgage was to be given priority over subsequent liens of materialmen." (Emphasis added.)

Thus Oklahoma permits conditions upon advances, compliance with which may make the advances obligatory upon the mortgagee. A word of warning. Although it is not true here, lenders' conditions upon advances under some circumstances may be so burdensome as to in effect allow the lender to have an option in the matter.

In present case, conditions controlling the making of advances are principally found in the loan agreement.[3] Lien claimants argue

---

2. *Antrim Lumber Co. v. Claremore Federal S. & L. Ass'n,* 204 Okl. 387, 230 P.2d 274 (1951); *Local Federal Sav. & L. Ass'n v. Davidson & Case Lbr. Co.,* 208 Okl. 155, 255 P.2d 248 (1952); *Home Savings & Loan Ass'n v. Sullivan,* 140 Okl. 300, 284 P. 30 (1929).

3. The subject of numbered paragraph 7 of the loan agreement is "Advances" and reads as follows:

"7. *Advances.* Advances under the Note will be made by our Bank on the following conditions:

7.1 *Purpose.* Money advanced under the Note shall be used for the purpose of paying contractors, mechanics, materialmen and suppliers pursuant to the terms of the contracts for construction, for services in fact performed in the construction of the Improvements and materials purchased for and either incorporated into the Improvements or

the similarity of conditions with those considered in *National Bank of Washington v. Equity Investors, 81 Wash.2d 886, 506 P.2d 20 (1973)* that were held to be such a reservation of discretionary authority as to make the advances in law optional. We do not agree, for in *National Bank of Washington* the opinion notes, using its own emphasis, the following:

"The construction loan agreement left the loan moneys largely under the control and dominion of the bank, '*to be advanced at such times and in such amounts as the Lender shall determine.*' It provided, too, that '*No advance shall be due unless, in the judgment of the Lender* ' all work for which the advance had been

suitably stored on the Building Site and other costs specifically approved by our Bank.

7.2 *Request for Advance.* You shall deliver to the Bank a Request for Advance, in form satisfactory to the Bank, and stating the amount of disbursement requested, at least four business days before the requested date of disbursement. Each Request for Advance shall be signed by an architect, approved by our Bank, and you, and shall be accompanied by billing statements, vouchers and invoices, in form satisfactory to the Bank. Each Request for Advance will expressly warrant that the work for which the advance is requested has been performed in accordance with the plans and specifications.

7.3 *Information.* On request by the Bank, the Request for Advance shall be accompanied by:

7.3.1 Proof, satisfactory to the Bank, that all invoices for labor and materials have been paid except those contained in the current Request for Advance; and/or

7.3.2 Lien waivers from all payees under the previous Requests for Advances; and/or

7.3.3 A report by an architect, approved by our Bank, which shall specify the square footage of the Improvements and the estimated percentage of completion of the Improvements, together with detailed comments on the specific work performed since the date of the last such report rendered to the Bank; and

7.3.4 An endorsement to the title insurance policy showing no liens of record or additional encumbrances not acceptable to the Bank.

If any or all of the above information is requested, it shall be obtained and submitted to the Bank at your expense.

7.4 *Bank's Inspection.* If, for any reason, the Bank deems it necessary to cause the work to be examined by its representatives

made had been done in a good and workmanlike manner, and unless the construction be approved by the architect."

 Here, form of advance request, proof of invoice payment, and bank's own inspection were to be "satisfactory to the Bank." There is no option to pay the proceeds of the loan as the lender sees fit as pointed to in *Thompson, supra, p. 528,* in reference to *Antrim,*[4] and other authority.[5] As said in *National Bank of Washington, supra,* "(i)f the bank, however, under the construction loan agreement could have been compelled in the courts to advance the moneys on the loan, then its lien is totally superior and prior * * *." Satisfaction

prior to making any advance, it shall have a reasonable time within which to do so, and the Bank shall not be required to make any advance until such examination has been made, at your expense, and is satisfactory to the Bank.

7.5 *Disbursement.* If the Request for Advance is approved by the Bank, the Bank shall, on the date the requested advance is to be made or as soon thereafter as all conditions precedent to such advance have been satisfactorily met, deliver checks to approved payees whose invoices are entitled to be paid from the proceeds of the advance, or, at the discretion of the Bank, such advance may be made directly to your special account with the Bank into which all advances hereunder (but no other funds) may be deposited, and against which only checks shall be drawn for payment of the approved costs of construction of the Improvements, which checks must be co-signed by a designated representative of the Bank. Disbursements shall not be made more often than monthly and advances under the Note may, at the option of the Bank, be recorded on the Note and/or by deposits to the foregoing account, and such records shall be conclusive evidence of all advances and the unpaid balance of the Note.

7.6 *Conditions to Advance.* Monthly advances shall not be made unless (a) this Agreement, the Note, and the instruments securing it and any other instrument incidental to the transactions hereby contemplated are in full force and effect, and (b) a default does not exist under the terms of this Agreement, the Permanent Commitment or any instrument executed pursuant to the terms hereof."

4. See n. 2, supra.

5. *Garey v. Rufus Lillard Co.,* 196 Okl. 421, 165 P.2d 344 (1945).

of the bank under the present loan agreement could not be made so unreasonable as to be strictly discretionary with the bank and defeat the compelling of the advancements in the courts. There is no reservation of discretionary authority for the advancements to be made at such times and in such amounts as the lender shall determine. The advances on the present loan were obligatory, and not optional, in nature. This allows the lender's mortgage lien to be superior to the lien claimants.

■ Lien claimants would estop the lender from asserting the priority of its mortgage lien under authority of *Apex Siding & Roof. Co. v. First Federal Sav. & L. Ass'n, Okl., 301 P.2d 352 (1956)* and *Palmer v. Crews Lumber Co., Inc., Okl., 510 P.2d 269 (1973)*. In *Apex Siding & Roof. Co., supra,* the lender agreed by letter to increase its present loan giving the borrower more money and resulting in Apex contracting with the borrower to make needed repairs. The lender's conduct, as shown by the letter, created an estoppel preventing the lender from asserting the priority of lender's mortgage lien over the subsequent lien of the party making the repairs. In *Palmer, supra,* the lender allowed the purchaser of a house to make further payment under his contract after the lender had taken possession, continued the construction to protect the house from weather, but withheld its intent not to finish the house. There, estoppel under authority of *Apex Siding & Roof. Co., supra,* was applied. In present case, we make no application of estoppel, for the lender sought additional security or funds from the borrower upon making a judgment determination its loan was probably insufficient to cover the construction cost, but did not induce lien claimants to continue supplying labor and material to the construction project. As pointed to in the lien claimants' brief, the representation of funds being advanced by the lender relied upon by the lien claimants to continue the construction came from the borrower, Bell, and not the lender bank.

■ Though construction funds in the hands of the borrower-mortgagor have been impressed with a statutory trust under 42 O.S.1971, §§ 152, 153, this court has refused to extend any obligation or special duty back to the lender-mortgagee to make sure proceeds of a construction loan in the hands of the borrower-mortgagor are properly applied to satisfy "lienable" claims. *Shankle Equip. v. Liberty Nat. Bank & Trust Co., etc., Okl., 569 P.2d 965 (1977)*. Having refused such a special duty under a statutorily created trust, it is difficult to create such a special duty based on an equitable lien theory stemming solely from the creation of the construction loan fund and no reliance by the lien claimants on any assurances or inducements of the lender. We do not do so.

■ Reversible error is argued for exclusion of two exhibits: one, a moving permit as to a type of dozer used at the beginning of the construction; the other, an invoice composed long after the work was accomplished and without any original supporting documentation would have indicated the date first work was done. Both exhibits would go to the fact issue as to the commencement of construction prior to the recording of the mortgage lien first discussed in this opinion.

Having determined the trial court was principally persuaded on this fact issue by the testimony of the licensed engineer and his pre-construction inspection report, and that the trial court's fact determination was not so clearly against the weight of the evidence as to prevent the operation of a presumption in favor of that holding, any error relating to the exclusion of these exhibits would be harmless. It does not appear a different result might have followed from consideration of the rejected evidence or the rejection resulted in a miscarriage of justice. *Little v. Echols, Okl., 269 P.2d 984 (1953); Gray v. Gray, Okl., 459 P.2d 181, 186 (1969)*. We do not reverse on the exclusion of the two exhibits as evidence.

Affirmed.

All of the Justices concur.