FIRST NATIONAL BANK & TRUST COMPANY OF ARDMORE, Oklahoma, Appellants,

v.

Donald J. WORTHLEY, Sr.; Mary A. Worthley; Lester J. Morton; Donald J. Worthley, Jr.; Danny J. Worthley; Ardmore Lumber Co., Inc.; Joe Brown Company; Ardmore Plumbing Company, Inc.; Day Concrete and Block Co.; Sears, Roebuck & Co.; Jerry Patrick, d/b/a/ Patrick Painting Contractor; Jim Shrader, d/b/a Shrader Insulation & Electric; Don Carter, d/b/a Carter Draperies; Charles Davenport, d/b/a Davenport Glass; Arbuckle Supply Co.; the United States of America, and Merlin C. Blood, d/b/a Blood's Temperature Control, Appellees.

No. 60759.

Court of Appeals of Oklahoma, Division No. 3.

Oct. 29, 1985.

Rehearing Denied Dec. 17, 1985.

Certiorari Denied Feb. 26, 1986.

Robert D. Long, F. Lovell McMillan, Ardmore, for appellants.

W. Lawrence Eakin, Jr., Ardmore, for appellee Ardmore Plumbing Co.

Michael A. Cawley, Paul E. Pitts, Ardmore, for appellee Ardmore Lumber Co., Inc.

Teresa J. Brown, Ardmore, for appellee Joe Brown Co., Inc.

Lee Card, Ardmore, for appellee Patrick d/b/a Patrick Painting Contractor.

HOWARD, Judge:

This appeal was initiated by the Appellant, First National Bank and Trust Company of Ardmore, urging the reversal of the trial court's order which gave priority to certain mechanics and materialmen's liens over their correctly filed mortgages.

Appellant bank loaned El-Jay Construction Co., a partnership composed of Donald J. Worthley, Sr., Mary A. Worthley and Lester J. Morton, $325,000.00. This was a construction loan that was to be utilized for the building of a sixteen unit apartment complex. The promissory note was executed on March 25, 1981. As security, the Bank was given a mortgage covering the lots where the apartments were to be built. No construction had begun at the time of the signing of the loan note. The mortgage was recorded March 26, 1981. The terms of the loan indicated that the bank retained no control over advances of the

money to borrowers. Testimony of Robert S. Neal, the loan officer in charge of the project, stated that periodic inspections of the building site were conducted and that the advances were dependent on the progress of the project. A second loan was given to El-Jay Construction Co. by Appellant for $100,000.00 on August 24, 1981. A number of those who supplied services and/or material for the construction project were not paid. The following filed liens on the property within the statutory time of four months; Sears, Roebuck & Co.; Merlin C. Blood, d/b/a Blood Temperature Control; Jerry Patrick, d/b/a Patrick Painting Contractors; Joe Brown Company, Inc.; Ardmore Lumber Company, Inc.; and Ardmore Plumbing Supply Co., Inc. In addition, the Federal Government filed a tax lien on the property for unpaid taxes.

Appellant filed suit in January of 1983 to foreclose on the mortgages granted to El-Jay. The Defendants, Appellees here, were all those who filed liens and those who signed for the loans. All parties waived a jury trial and the trial court heard evidence over several days.

Defendants Donald J. Worthley, Sr., Mary A. Worthley, Lester J. Morton, Donald J. Worthley, Jr., Danny J. Worthley, and several materialmen and/or mechanics were adjudged in default. The trial was completed April 25, 1983. The case was taken under advisement and Judgment rendered on June 17, 1983. The Judgment and Decree of this complex case was well thought out, and well written. The priorities were established in this order: (1) Appellant's first mortgage to the extent of $32,602.75, with interest at the rate of 14% per annum from March 25, 1981, until paid. This was the amount paid for the lots on which the apartments were built, less the loan fee; (2) Merlin C. Blood for $12,000.00 with interest of 6% per annum, until paid from April 7, 1983. Jerry Patrick was given equal priority for $15,368.00 with 6% interest per annum from November 27, 1981; (3) Appellant's first mortgage to the extent of $133,707.00, with interest of 14% per annum on each advance made by plaintiff starting April 1, 1981 through June 19, 1981; (4) Ardmore Lumber in the amount of $55,432.03, with 18% interest per annum from December 2, 1981 until paid, co-equally with Joe Brown Company in the amount of $16,954.22 with 18% interest per annum from January 8, 1982 until paid, and Ardmore Plumbing Supply Co. for $11,501.35 with 18% interest from January 6, 1982; (5) Appellant's first and second mortgage to the extent of the balance on the two Promissory Notes with interest as provided therein; (6) The United States of America for $15,957 with interest set according to Federal Statute; (7) all parties for attorney's fees and costs and (8) any remainder to Donald J. Worthley, Sr., Mary A. Worthley and Lester J. Morton. Sears, Roebuck Co. failed to correctly file their lien and were therefore unprotected.

Appellant appealed this decision arguing that they were obligated to make all advances and that they should receive priority over all lienholders for both the first and second mortgages. We affirm the findings and orders of the trial court.

 Appellant's first contention is that error was committed by failing to award them first priority to the $325,000.00 loan. Reliance is placed on *Local Federal Savings and Loan Ass'n. v. Davidson and Case Lumber Co., et al.,* 208 Okl. 155, 255 P.2d 248 (1952); *Thompson v. Smith,* 420 P.2d 526, (Okl.1966); and *Tulsa Readymix Concrete Co. v. Dale Carter Lumber Co.,* 381 P.2d 849 (Okl.1963), to show that a mortgage given to secure future advances has priority over mechanic's liens that arise subsequently for the full amount of the loan. That includes money advanced after as well as before the existence of the liens, in cases where the mortgage was recorded prior to the service or use of materials, and when the advances were obligatory on the mortgagee. The question that must be answered is whether the bank was in fact obliged to advance the full $325,000.00 despite receiving reports that supplies and mechanics were not being paid. The Promissory Note provided no conditions which would automatically trigger advancements

by Appellant, and no other written instrument set out conditions which would make advances mandatory. The trial court in this case relied on the course of conduct between Appellant and the lien claimants. The cases relied on by Appellant involved contracts which stated advances were to be made when construction reached certain stages. The factual pattern in this instance closely follows that of *Home Savings & Loan Ass'n. v. Sullivan, et al.,* 140 Okl. 300, 284 P. 30 (1929). In both cases no written statement outlining conditions when advances were to be made existed. Testimony was received in each instance showing that the bank was inspecting the progress of the project before each advance was made. In *Sullivan, supra,* as here, the court found that the advances were not obligatory. The trial court relied on the test set out in *Liberty National Bank and Trust Company v. Kaibab Industries,* 591 P.2d 692 (Okl.1979), for determining whether advances were obligatory or optional: "Could the bank have been compelled by the courts to make them (the advances)?" We agree with the trial court's conclusion that the borrowers could not have forced the bank to make the advances.

■ Appellant's second contention of error states that the trial court erred when it granted co-equal priority and priority over their $100,000.00 mortgage. This argument is based on the holding in *American-First Title and Trust Co. v. Ewing, et al.,* 403 P.2d 488 (Okl.1965). This case held that in cases without a general contractor, priority is established by the date when material or services are first provided. Appellants feel that the only lien claimants entitled to priority over the $100,000.00 were Ardmore Lumber Company and Joe Brown Company (who Appellants feel should be denied standing for other reasons). These suppliers had provided services prior to the filing of the second mortgage. The trial court, in making his decision again relied on *Home Savings and Loan Ass'n. v. Sullivan,* 140 Okl. 300, 284 P. 30 (1929); where it is stated:

... where it appears that the money from a prior recorded mortgage is to be paid only as the building progresses, and the mortgagee retains the option of determining when the money should be advanced to the owner, claimants who furnish material, although the first material is furnished after the mortgage was recorded, have a prior lien to that of the mortgagee.

We find that this fact situation can be distinguished from *Ewing,* supra. In this case, Appellant made two loans. The first loan was secured by property far below the value of the loan. The asset Appellant counted on to secure the loan was the building being constructed. The trial court did give the bank priority for the amount loaned before any of the liens arose. However, he gave co-equal priority from the date of the delivery of the first supplies. This is logical and correct from an equitable view. The Appellant was in a far better position than the suppliers to know the status of the project. The building did not constitute a valuable asset until completed. The Appellant had knowledge, according to the testimony, that there were problems with payment to the materialmen before the second loan was given. They could have chosen not to make this loan. Appellant needed the building to be completed and it would be unfair to give Appellant priority over those who did the necessary work.

■ Appellant's third proposition is that the trial court erred when it determined they were estopped from asserting priority of their mortgage lien over the liens of Appellees Patrick and Blood. Both Appellees presented testimony that they were given assurances that they would be paid. It was stated that there was reliance on these promises, and in fact at one point, the bank paid Appellee, Jerry Patrick, d/b/a Patrick Painting Contractor, $2,000.00 directly. Appellant contends that those working on the project had a superior position to evaluate the financial condition of the endeavor. We disagree. As stated previously in this opinion, Appellant's posi-

tion was markedly improved by the completion of this project. There was sufficient evidence presented for the trier of fact to conclude that Appellant should be estopped from asserting their priority over these Appellees.

Appellant argues in proposition four that they should receive attorney's fees at the same priority level as the money due on the notes. The trial court awarded co-equal priority to all the parties for attorney's fees. We find this to be a reasonable decision in light of the very complex situation concerning priorities. The Appellant was not granted a clear first priority as to the entire amounts of the loans, making calculations concerning priority for attorney's fees virtually impossible.

Appellant alleges in proposition five that the trial court incorrectly ruled that Appellee Blood timely filed his lien under the provisions of 42 O.S. 1981 § 142. This statute provides that mechanic's must file a lien statement "within four (4) months after the date upon which material was last furnished or labor last performed under contract...." Appellant claims there was substantial completion more than four months before filing occurred. Merlin Blood was under contract to install the heating and air conditioning units in the apartments. While the evidence reflected that the heating units were operating and people were occupying the apartments, it also showed that the air conditioning was not completed. This was completed on April 7, 1982 and the lien filed April 16, 1982. The trial court was correct in finding this lien timely filed.

Appellant's sixth and final contention of error concerns Appellee Joe Brown Company. Mr. Brown testified that he accepted from borrower an assignment of a contract for deed. Appellee Brown termed this "additional security" for the debt he was owed. There was no testimony that this assignment was to supersede the lien or go to partially satisfy it. Mr. Brown was owed more than the amount of his lien due to supplies provided to borrowers for other projects. Appellee Brown paid borrower $1,000.00 for the contract for deed and at the end of the first year no equity had accrued in the property. Relying on *Gallaspy v. Warner*, 324 P.2d 848 (Okl.1958) the trial court concluded that this separate transaction was made to satisfy amounts owed and not covered by the lien.

For the reasons stated, we affirm the order of the trial court.

AFFIRMED.

HANSEN, J., concurs.