KAREN MYERS, LTD., an Oklahoma corporation, d/b/a To Be Continued, Plaintiff,

v.

THE LAW CO., Appellant,

and

Federal Savings and Loan Insurance Corporation as receiver for, Phoenix Federal Savings and Loan Association, Appellee,

and

CCL & Associates, Inc., a foreign corporation, Sugarberry Apartments, Ltd., an Oklahoma Limited Partnership, U.S. W.I., Inc., Keystone Sand and Gravel Company, Inc., Sears & Roebuck, Inc., Rent–It Company of Tulsa, Inc., Cooper Supply Company, Southwest Gypsum Floors, Inc., Sunshine Steam Machine, Theta Corp. of Wichita, Kansas, Eddy's Landscape & Design, Inc., Phillip D. Thompson, Charlie Thompson, H & H Concrete Service, Inc., Cedar Glade Apartments, Ltd., Cedar Glade Apartments Investors, a Georgia General Partnership, General Electric Supply Co., Rain Flow of Tulsa, Inc., Heatwave Supply Co., Kim Coleman, Lawrie Mor-

row, Overlook Apartments, Ltd., First Federal Savings of Arkansas, Commercial Credit Co., Joe Dennis, Erasmo Hernandez, Jr., Gabriel Hernandez, Besco Supply Co. and Southern Electrical Supply of Tulsa, Inc., Defendants.

No. 70692.

Court of Appeals of Oklahoma, Division No. 3.

Feb. 27, 1990.

Rehearing Denied April 9, 1990.

Certiorari Denied June 12, 1990.

David H. Sanders, Tulsa, for appellant.

Richard W. Gable, and, James W. Rusher, Tulsa, for appellee.

## MEMORANDUM OPINION

HANSEN, Presiding Judge:

This appeal involves the priority of a lender's mortgage over that of a general contractor's materialmen's lien. Appellant, The Law Co., was the general contractor for the construction of the Sugarberry Apartments. Phoenix Federal Savings and Loan Association financed the construction. The construction loan was evidenced by a promissory note in the principal sum of $9,605,000.00, and secured by a mortgage. Phoenix recorded its mortgage before the Law Company started construction.

Karen Myers, Ltd. commenced this action to foreclose a mechanic's lien on the apartments, joining Phoenix and Law Company, inter alia, as defendants. Phoenix cross-petitioned to foreclose its mortgage and The Law Company cross-petitioned to foreclose its lien.[1] The Law Company also prayed for a personal judgment against Phoenix for restitution for conversion of "trust fund monies" pursuant to 42 O.S. 1981 §§ 152, 153.

Both Phoenix and The Law Company filed Motions for Summary Judgment against each other as to the priority of their interests. The trial court denied The Law Company's motion and granted Phoenix's, thereby adjudicating the mortgage lien of Phoenix superior to any claim of The Law Company.

The Law Company appeals this decision arguing certain monies withheld by Phoenix from the loan proceeds were not valid lien claims. Therefore, Phoenix was liable for conversion of these funds, and the trial court erred in failing to order Phoenix to pay, as restitution to The Law Company, the $348,725.46 owed to it under its lien claim.

The Law Company does not assert it supplied any materials or labor prior to the date Phoenix recorded its mortgage. It recognizes that Phoenix has a first mortgage lien on the property. It is arguing only that Phoenix did not have the right to take "trust fund monies" under 42 O.S. 1981 §§ 152, 153 and apply them to the mortgage lien, prior to satisfaction of all mechanic's lien claims.

On the other hand, FSLIC, as receiver for Phoenix, contends the trust fund statutes are not applicable, as the funds advanced under the loan agreement had never become trust funds pursuant to the statute. We agree.

The construction loan agreement between Sugarberry and Phoenix vested Phoenix with control over the advancement and disbursement of the mortgage proceeds. The agreement provided that the loan proceeds were to be used for various purposes including payment of interest, certain fees, insurance, and other expenses. Prior to any disbursement of the loan proceeds to the contractor or to Sugarberry, Phoenix paid itself certain expenses, including interest, an origination fee, a developer's fee and attorney's fees as permitted by the agreement.

■ 42 O.S.1981 § 152 does impose trust fund status on monies received under a construction loan.[2] But this section con-

1. After Appellant filed its Petition in Error, FSLIC as receiver for Phoenix removed the remaining causes of action to federal court and these claims are currently pending before the United States District Court for the Northern District of Oklahoma. Neither Karen Myers, Sugarberry, nor the other lien claimants are parties to this appeal.

2. Section 152 provides:
(1) The amount payable under any building or remodeling contract shall, upon receipt by any contractor or subcontractor, be held as trust

**768**

tains provisions for the creation of a trust for only those funds received by the mortgagor or any contractor or subcontractor for the construction. The clear intent of this statute is to impose on the *mortgagor* a duty to hold in trust for lien claimants any money it receives from its loan. Subsection 2 refers to proceeds already turned over to a borrower. It does not impose a duty on the lender to pay lien claimants before disbursement of the proceeds.

■ The funds retained by Phoenix and applied to accrued interest and loan origination fees were not disbursed by Phoenix to anyone and were never received by Sugarberry, the mortgagor. Thus, that money was never impressed with § 152 trust status.

The Law Company cites us to *Sandpiper North Apartments, Ltd. v. American National Bank & Trust Co. of Shawnee,* 680 P.2d 983 (Okla.1984). In that decision one of the subcontractors assigned to the lender the proceeds of its subcontracts as security for loans made with the general contractor's knowledge. The general contractor later sued both the subcontractor and the lender claiming the lender misapplied these funds to the indebtedness of the subcontractor. The Supreme Court held that if some person other than the entities enumerated in § 152 actually exercised control over the disbursement of any money, knowing it to be a part of the trust funds, that person could be regarded as an involuntary trustee. But Justice Opala also recognized that the mere fact that one other than a statutory trustee is actually able, or has the opportunity to control the application of some of the trust funds is alone insufficient to cast that person in the role of involuntary trustee.

The significant difference between this case and *Sandpiper* is that Phoenix never disbursed the funds, and the mortgagor never received the funds. *Sandpiper* involved money the *lender had received,* not loan proceeds it had retained and never disbursed. The Court held that such a recipient, who was only coincidentally also a lender, is liable to the extent it *receives* the statutory trust monies.

■ Under Oklahoma law, a prior recorded mortgage has priority over liens subsequently filed by materialmen. *Liberty National Bank & Trust Co. v. Kaibab Industries, Inc.,* 591 P.2d 692 (Okla.1978). The trial court correctly found Phoenix's prior recorded mortgage was superior to that of The Law Company and that The Law Company was not entitled to restitution from Phoenix for its lien.

AFFIRMED.

BAILEY, J., and HUNTER, V.C.J., concur.

---

funds for the payment of all lienable claims due and owing or to become due and owing by such contractors or subcontractors by reason of such building or remodeling contract.

(2) The monies received under any mortgage given for the purpose of construction or remodeling any structure shall upon receipt by the mortgagor be held as trust funds for the payment of all valid lienable claims due and owing or to become due and owing by such mortgagor by reason of such building or remodeling contract.

(3) The amount received by any vendor of real property *under a warranty deed* shall, upon receipt by the vendor, be held as trust funds for the payment of all valid lienable claims due and owing or to become due and owing by such vendor or his predecessors in title by reason of any improvements made upon such property within four (4) months prior to the delivery of *said deed.*