977 F.2d 595
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Max Alexander HEIDENREICH, Appellant,
v.
BUILDERS STEEL CO., INC., Commercial Ceilings and Drywall,
Inc., and Gaines Plumbing and Piping Co., Appellees.
 Nos. 92-5018, 92-5035.
 United States Court of Appeals, Tenth Circuit.
 Oct. 15, 1992.
 
 Before McKAY, Chief Judge, BRORBY, Circuit Judge, and McWILLIAMS, Senior Circuit Judge.
 ORDER AND JUDGMENT*
 McWILLIAMS, Senior Circuit Judge.
 
 
 1
 All parties in this court have waived oral argument and asked that the appeal be determined on the briefs. After examining the briefs and appellate record, this panel has also determined that oral argument would not materially assist the determination of this appeal. The cause is therefore submitted without oral argument. See Fed.R.App.P. 34(a) and 10th Cir.R. 34.1.9.
 
 
 2
 After a hearing, the Bankruptcy Court for the Northern District of Oklahoma held that claims by three subcontractors against Max Alexander Heidenreich, the debtor, could not be discharged under 11 U.S.C. § 523(a)(4). That statute provides, inter alia, that an individual debtor is not discharged from a debt arising out of a "defalcation while acting in a fiduciary capacity." Accordingly, the bankruptcy court entered its judgment in favor of the three subcontractors as follows: (1) for Builders Steel Company against Heidenreich in the amount of $9,775.68, plus costs and fees, and excepting the same from the debtor's discharge; (2) for Gaines Plumbing and Piping Company against Heidenreich in the amount of $22,934.57, plus costs and fees, and excepting the same from the discharge; and (3) for Commercial Ceilings and Drywall, Inc. against Heidenreich in the amount of $48,699.62, plus costs and fees, and excepting the same from the discharge.
 
 
 3
 The debtor appealed the judgment of the bankruptcy court to the United States District Court for the Northern District of Oklahoma. A United States Magistrate, in his Report and Recommendation, recommended that "the Bankruptcy Court's descision be affirmed, the Court's ruling being neither erroneous nor contrary to the law." The debtor filed objections to the Magistrate's Report and Recommendation, which do not appear to be in the record on appeal. On review thereof, the District Court for the Northern District of Oklahoma "adopted and affirmed" the Magistrate's report and in so doing concluded that the bankruptcy court's order and judgment was proper "as to all issues considered therein." The debtor appeals to this court from the order and judgment of the district court. We affirm. A brief recital of the background facts, which are not in dispute, will put the present controversy in focus.
 
 
 4
 Max Alexander Heidenreich and two companies which he controlled, i.e., Brookside Realty Limited Partnership (Brookside) and Hycore Commercial Realty (Hycore), began the development of Brookside Center in Tulsa, Oklahoma. In connection therewith, Brookside obtained a loan from Republic Savings and Trust (Republic) for $1,150,000 for the "construction and remodeling" costs of the project. The loan agreement provided, inter alia, that $203,721.06 of the loan proceeds could be used for "soft or indirect" costs incurred by Brookside or Hycore.
 
 
 5
 Brookside received from Republic the sum of $1,023,700, not the $1,150,000 figure called for in the loan agreement. Brookside thereafter delivered this sum to Hycore. From that sum Hycore paid a total of $820,033 to various materialmen, mechanics, and laborers working on the project. Hycore kept $203,667, of which $181,947.11 was spent for "soft or indirect" costs, i.e., overhead, salaries, and related expenses. Although many subcontractors were paid, Builders Steel, Gaines Plumbing and Piping, and Commercial Ceilings and Drywall, also subcontractors on the project, were not paid. Accordingly, they objected to their debts being discharged in Heidenreich's bankruptcy proceeding and instituted the present proceeding in bankruptcy court to determine the dischargeability of their respective claims.
 
 
 6
 We are concerned with Oklahoma statutes relating to construction loans. In that connection, 42 O.S. § 152(2) reads as follows:
 
 
 7
 The monies received under any mortgage given for the purpose of construction or remodeling any structure shall upon receipt by the mortgagor be held as trust funds for the payment of all valid lienable claims due and owing or to become due and owing by such mortgagor by reason of such building or remodeling contract.
 
 
 8
 In this same connection, 42 O.S. § 153(1) reads as follows:
 
 
 9
 The trust funds created under Section 152 of this title shall be applied to the payment of said valid lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid.
 
 
 10
 The district court agreed with the bankruptcy court that under the aforementioned statutes the $1,023,700 received by Hycore from Republic via Brookside was held by it as trust funds for the payment of the claims of subcontractors such as the three with whom we are here concerned, and that Hycore violated that trust relationship when it used some of this money for its own "soft or indirect" costs. And the district court held this was so even though the construction agreement itself had a provision permitting such use. The district court reasoned that the Oklahoma statute "would be crippled if it could be circumvented by clauses such as the one in the Republic-Brookside loan agreement." We are in accord with the district court's understanding of Oklahoma law.
 
 
 11
 It is agreed that the loan agreement between Republic and Brookside was for construction and remodeling. Such being the case, the foregoing Oklahoma statutes, as applied, provide that monies received by Brookside from Republic under their loan agreement, monies which were then given to Hycore, are held as "trust funds" for payment to subcontractors such as the three involved here. Obviously the intent of the Oklahoma statute is to protect subcontractors. It would be odd that a borrower and a lender such as Brookside and Republic could thwart that statutory intent by a private agreement between themselves permitting the borrower to use the borrowed money for purposes other than the payment of subcontractors. We are, therefore, in accord with the district court's reading of 42 O.S. §§ 152(2) and 153(1).[1]
 
 
 12
 The case relied on by Heidenreich, Karen Meyers, Ltd. v. The Law Co., 794 P.2d 766 (Okla.App.1990), is really more supportive of the district court's order and judgment. In that case, the lender did not give the borrower the full amount called for in the loan agreement, but apparently retained a portion of the loan. The Oklahoma Court of Appeals held that the monies retained by the lender and never received by the borrower were not "trust funds" for payment to unpaid subcontractors under 42 O.S. §§ 152(2) and 153(1). In thus holding, that court stated that the Oklahoma statute "impose[d] trust fund status on monies received under a construction loan," id. at 767 (emphasis added), but only on those monies received by the mortgagor.
 
 
 13
 Our case, however, does not concern money retained by Republic and never received by Brookside. Rather it concerns money received by Brookside under a loan construction agreement from Republic, and then delivered to Hycore. We agree with the district court that the Oklahoma statute does apply. Accordingly, the indebtedness owed the three subcontractors involved here is not dischargeable under 11 U.S.C. § 523(a)(4).
 
 
 14
 Counsel also argues in this court that Gaines Plumbing and Piping Company failed to show that it had a valid lien claim against the subject property.[2] The controversy concerns whether Gaines' lien was filed within ninety days of the last work done by it at the job site as required by Oklahoma statute. That, in turn, depends on whether the "last work" was a part of the contract job or was "after the fact" work designed solely to extend the time for filing a lien. In this regard, the bankruptcy court indicated "it was not convinced that the purpose of the fixing of the water heater and/or repair of the same was for the purpose of extending the lien rights of Mr. Gaines" and found that "Gaines Plumbing had a valid perfected indebtedness in the sum of $22,934.57." We note that the transcript of the testimony in the trial of this matter in the bankruptcy court is not a part of the record on appeal. In such circumstance, we decline to disturb the bankruptcy court's finding of fact that the "last work" was not contrived for the purpose of extending the time within which Gaines could file its lien.
 
 
 15
 In this court, Heidenreich also asserts that Gaines did not give him proper notice of the filing of a lien. It would appear that this matter was not argued to the district court. In any event, from the record before us we cannot conclude that there was improper notice.[3]
 
 
 16
 Judgment affirmed.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The findings of fact by a bankruptcy court should not be disturbed on appeal unless "clearly erroneous." However, a bankruptcy court's conclusions of law are reviewed de novo. In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1266 (10th Cir.1988)
 
 
 [2]
 In this court, Heidenreich does not challenge the validity of the liens filed by Builders Steel or Commercial Ceilings and Drywall
 
 
 [3]
 Counsel in his "Statement of Issues" in his brief in this court also asserts that the Bankruptcy Court erred in failing to sustain Heidenreich's motion for summary judgment. He did not, however, pursue the matter further in this brief. In any event, our disposition of this appeal resolves that particular matter, i.e., the denial of Heidenreich's motion for summary judgment was not error